D. L. WAGES, Appellant,

v.

Beryl WEINER, as Trustee for Bennett's Twin Oaks Pharmacy, Inc., Bankrupt, Appellee.

No. 23870.

United States Court of Appeals Fifth Circuit.

June 19, 1967.

Martin McFarland, Atlanta, Ga., Murphy, McFarland & Turoff, Atlanta, Ga., of counsel, for appellant.

Samuel J. Zusmann, Jr., Lipshutz, Macey, Zusmann & Sikes, Morris W. Macey, Atlanta, Ga., for appellee.

Before TUTTLE, Chief Judge, AINSWORTH, Circuit Judge, and FULTON, District Judge.

TUTTLE, Chief Judge:

This is an appeal from the judgment of the District Court denying a petition for review of the order of the Referee in Bankruptcy disallowing a $60,000 claim of appellant as a secured debt against the trustee in bankruptcy of Bennett Twin Oaks Pharmacy, Inc.

Bennett's was adjudicated a bankrupt on December 24, 1964. The claim of D. L. Wages, the appellant, which is in issue here, was based upon a certain promissory note and bill of sale to secure debt executed by the bankrupt on March 17, 1964, in the principal sum of $60,000. It is not disputed that the full sum represented by the promissory note was advanced by Wages to the bankrupt corporation contemporaneously with the execution of the security instrument; that the bill of sale to secure debt was properly and timely recorded upon the public records of the proper county; that the secured claim was unpaid at the time of bankruptcy and that all of the proceeds advanced by the claimant were expended on behalf of the corporation and that none of the amount inured to the personal benefit of the claimant.

The circumstances upon which the referee concluded that secured status should be denied to the Wages claim were the following:

As an inducement to Wages to get him to make the $60,000 advance to the corporation, Thomas A. Bennett, who owned the entire outstanding capital stock in the corporation, represented by 150 shares, transferred 70 shares outright to Wages, transferred five shares in escrow to a lawyer and accountant, W. F. Kerr, to vote the said shares during the pendency of the indebtedness, and transferred his remaining 75 shares to Wages as security for the indebtedness incurred by the corporation, but retained for himself the right to vote the said 75 shares; Bennett remained president of the corporation and Wages and Kerr became directors; thereafter, Wages paid considerable attention to the business of the corpora-

tion, being in the drugstore several times a week, attending some trade shows, and advising with respect to the possibility of opening other stores; Wages also advanced some $30,000 without security to assist in the operation of the company during the short period following the initial advance and before bankruptcy nine months later; in addition, Wages spoke of himself as a "partner" of Bennett in the business and he and Bennett also agreed that if Wages elected to sell the 70 shares of stock thus acquired by him back to Bennett the latter would pay him either book value or $800 per share, whichever was larger. There was no obligation on the part of Wages to sell nor on the part of Bennett to buy.

The original advance by Wages to Bennett was made at a time following a fire in the business which the bankruptcy referee found to have left the operation short of capital. Some $60,000 was received from fire insurance approximately one year prior to the transaction in question. According to Bennett's own testimony up through December of 1963, he said, telling of a conversation with Mr. Kerr, his accountant, "I had a good Christmas business and made a good deal of money, and, of course, was beginning to get on the upgrade a little bit, and then at the end of January, he [Kerr] says, 'Doc, this money situation, we had better do something about it' and I said, 'Well, Mr. Kerr, I put [sic] it up through Christmas now, and until summer gets here, I think I can make it all right.'"

Nevertheless, upon Kerr's suggestion, he did approach the appellant and the advance heretofore discussed was arranged.

Based on these circumstances, the referee concluded that the loan made by Mr. Wages was not a loan at all but was a contribution of capital to the corporation. In response to an attack made by Wages in his petition for review by the district court, the trustee asserts that the finding by the referee is a finding of fact which, under General Order in

Bankruptcy No. 47,[1] must be accepted by the trial court unless clearly erroneous. The trial court determined that the findings by the referee were not clearly erroneous.

■ The determination by the referee in bankruptcy that the circumstances set out above warrant his concluding that what started out as a loan of $60,000 secured by a mortgage on the assets of the corporation somehow became a contribution of capital, is wholly without evidence to support it and is thus clearly erroneous.

■ We do not have here the case of a sole stockholder of a corporation dealing with his own corporation to the detriment of general creditors. We have, rather, an outsider who, upon an offer of a bonus by a corporation's *stockholder*, makes a loan to a corporation in which he thereafter becomes in effect the owner of half the stock and for which he thereafter shows a substantial concern in the management. He did not, however, in any single act, prefer himself either as *creditor, director, stockholder or employee*. Merely because he thereafter assisted in the operation of the business *without compensation* and because he also made further unsecured advances and guaranteed some accounts of the corporation to trade creditors, for which he still remains liable, he is now found somehow to have relinquished his position not only as a secured creditor, but as a creditor at all as to the $60,000, and is relegated to the status of stockholder who is not permitted even to participate with unsecured creditors in the distribution of the assets in bankruptcy. We know of no principle of law which permits such determination.

This court, in the case of Arnold v. Phillips, 117 F.2d 497 (5 Cir.), decided in favor of the several creditors in a case in which the equities were much stronger in favor of the trustee. There, the secured claimant was the *sole* stockholder and president of the corporation who took a security deed covering the property of the corporation as security for *past* and *future* advances to the company. The trial court set aside the security deed in toto. This court, on appeal, agreed that as to the *prior* unsecured advances, they were to be treated as contributions to capital, but with respect to the advances made *after* the execution of the security deed, the court said:

"The advances made in 1937 and 1938 were valid debts secured by the recorded trustee. A corporation may validly borrow money on security from its stockholder and officer, subject to scrutiny as to the fairness and good faith of the transaction. Zorn v. Brooks, 125 Tex. 614, 83 S.W.2d 949. If the lender dominates the corporation it opens the transaction to closer examination; *it does not ipso facto invalidate it*. We find here no proof of *mala fides*, or that the money was not fully paid to and used by the corporation in an honest effort to carry on its business."

As to the cancellation of the security deed with respect to the after-made advances, this court determined that the decision of the trial court was clearly erroneous and it reversed this order.

■ Of course, as this court has said in Spach v. Bryant, 5 Cir., 309 F.2d 886, at page 888:

"In the careful examination and scrutiny of the claims of the dominant stockholders or officers of the bankrupt corporation, the burden is on such stockholders or officers to show the inherent fairness and good faith of the transactions involved".

Here there is not the slightest question about the fairness and good faith of this claimant's position, who was neither a "dominant stockholder" nor a managing officer; nor is there the slightest question as to the absolute good faith in all matters affecting the interest of the

---

1. "Unless otherwise directed, the order of the Referee * * * shall set forth his findings of fact and conclusions of law, and the Judge shall accept the findings of fact unless clearly erroneous." General Order of Bankruptcy No. 47.

creditors. The creditors were fully benefited by the advance of $60,000 to the corporation, by such efforts as the appellant made in assisting in supervising the operation of the business; in personally guaranteeing some of the trade accounts for the corporation and such other conduct as the referee found to be the basis of denying him the relief that an ordinary secured creditor would be entitled to.

It is only where the conduct of a stockholder or officer toward his corporation can be challenged as being detrimental to the creditors that there is any duty on behalf of the referee or the courts to recast the voluntary acts of the corporation into something different from what they have in good faith undertaken to engage in. This case is entirely devoid of any such circumstances.

The judgment of the trial court in denying the petition for review is reversed and the case is remanded to permit further proceedings not inconsistent with this opinion.