**In the Matter of MARTIN'S POINT LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 80–01019A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

June 19, 1981.

---

Robert H. Hishon, Atlanta, Ga., for debtor.

Theodore Guerard, Sherwood M. Cleveland, Columbia, S.C., for creditor.

## OPINION

WILLIAM L. NORTON, Jr., Bankruptcy Judge.

## FINDINGS OF FACT

The Plan of Reorganization (hereinafter referred to as the "Plan") under discussion in this opinion was filed by Martin's Point Limited Partnership (hereinafter referred to as "Debtor") on July 29, 1980. Hearings were held and briefs requested. But when filed, they were not brought to the attention of this Court by the Clerk's office as provided under the rules of this Court. On April 23, 1981, by letter from the attorney of the Debtor, the Court was reminded of the Plan and briefs. Thereupon, briefs and file were obtained and reviewed in preparation of this ruling. The Plan provides for the reorganization of the affairs of the Debtor and, toward that end, provides for reconveyance to the holders of purchase money secured indebtedness of certain real property on Wadmalaw Island, South Carolina (sometimes hereinafter referred to as Martin's Point Plantation) which, for all practical purposes, constitutes the sole asset of the debtor.[1] The Plan also provides for the payment of all other undisputed obligations of the Debtor.

The Partners of the Partnership, i. e., its equity security holders, who, since 1973, have contributed over $391,900.00 towards the purchase of Martin's Point Plantation, have, without dissent, voted to approve the Plan. With only one exception, every creditor of the Partnership who voted on the Plan, voted to accept the Plan. The only objection filed to the Plan was by C. Stuart Dawson, Jr.

## THE PLAN

The Plan of Reorganization filed by the Debtor divides the Debtor's creditors into five classes as set forth below:

(A) The Class of First Priority Secured Creditors, which consists of one creditor—

The Federal Land Bank—which has a first priority security interest in Martin's Point Plantation.

(B) The Class of Second Priority Secured Creditors, which consists of three creditors —C. Stuart Dawson, Jr., Harold E. Igoe, Jr., and Wadmalaw Island Land Company, Inc.—who have security interests in Martin's Point Plantation equal in priority with each other, but which are subordinate to The Federal Land Bank's security interest in the property.

There are four other classes of creditors which are unimpaired and not in dispute as to this Confirmation of Plan. The Plan provides that the Partnership shall convey all of its right, title and interest in Martin's Point Plantation and all of its interest in 13,000 shares of the stock of The Federal Land Bank Association of Walterboro to Wadmalaw Island Land Company, Inc. and Messrs. Igoe and Dawson, in full and complete satisfaction of the indebtedness owing by the Partnership and any of its partners to each of the transferees. Conveyance to these parties is to be made in the following percentages of undivided interest:

| | |
|---|---|
| C. Stuart Dawson, Jr. | 31.68% |
| Harold E. Igoe, Jr. | 34.16% |
| Wadmalaw Island Land Company, Inc. | 34.16% |

The conveyance of Martin's Point Plantation will be made subject to the first mortgage of The Federal Land Bank.

The Plan further provides that M. E. Ellinger, Jr., as general partner of Martin's Point Limited Partnership, shall contribute to the Partnership in an amount of money which, when added to the funds presently held by the Partnership, will be sufficient to enable the Partnership to pay the claims of all the creditors in the Class of Tax Creditors, the Class of Unsecured Creditors Whose Claims Are Not In Dispute, and the Class of Post-Filing Creditors.

Alternatively, Mr. Dawson may elect, within the first 10 days following confirmation of the Plan and in lieu of receiving a

---

1. In addition to Martin's Point Plantation, Martin's Point Limited Partnership also owns stock in The Federal Land Bank Association at Wal-terboro in the amount of $13,000, a claim against Mr. Dawson, *et al.*, and a small amount of cash.

conveyance of the aforesaid property, to receive either cash in the amount of $160,000.00 or a note in the amount of $190,000.00, in full and complete satisfaction of his claims against the Partnership and any of its partners. The cash and note will be received from the Wadmalaw Island Land Company, Inc. and Harold E. Igoe.

### ACCEPTANCE OF THE PLAN

Every creditor and every equity security holder who voted on the Plan voted to accept the Plan, with the sole exception of Mr. Dawson. The voting was as follows:

| Class | No. Accepting | No. Rejecting |
|-------|---------------|---------------|
| A. The Class of First Priority Secured Creditors | 1 | 0 (unanimous) |
| B. The Class of Second Priority Secured Creditors | 2 | 1 |

The only class in which any dissenting vote was cast concerning the Plan was the Class of Second Priority Secured Creditors, which consisted of C. Stuart Dawson, Harold E. Igoe, Jr., and Wadmalaw Island Land Company, Inc. Mr. Igoe and Wadmalaw Island Land Company, Inc., as of the date of the Debtor's Petition, each had claims against the debtor in the amount of $258,290. Mr. Igoe and Wadmalaw Island Land Company, Inc. both voted to accept the Plan. Mr. Dawson, as of the date of the filing of the Debtor's Petition, had claims against the Debtor in the amount of $239,480.00. Mr. Dawson voted to reject the Plan. Because Mr. Igoe and the Wadmalaw Island Land Company, Inc. amount to more than one-half of the creditors of the class, and since their claims collectively amount to more than two thirds in amount of all claims of the creditors of their class, the class in which they are members are deemed, pursuant to Section 1126 of the Bankruptcy Reform Act of 1978 [11 U.S.C. § 1126(c)] (hereinafter sometimes referred to as the Bankruptcy "Code"), to have accepted the Plan—along with the other classes of creditors and equity security holders who voted unanimously to accept the Plan.

Mr. Dawson has appeared at the hearing on Confirmation of the Plan and stated an objection to the Plan. He has also filed a written objection to his classification under the Plan, contending that the classifications set forth in the Plan are improper in that he should be placed in a class by himself rather than in a class with Mr. Igoe and the Wadmalaw Island Land Company, Inc. Should the claim of Mr. Dawson be required to be placed in a separate class, that class would constitute an objecting class and the claim would have to be dealt with separately. The court will first discuss the classification issue.

### CLASSIFICATION

Three creditors, i. e., Mr. Igoe, Mr. Dawson, and the Wadmalaw Island Land Company, Inc., each hold purchase money promissory notes executed by the Debtor in connection with its purchase of Martin's Point Plantation. While there are three separate promissory notes, all three of those notes are secured by a single, second-priority, purchase money mortgage security interest in Martin's Point Plantation.

The purchase money notes held by Messrs. Igoe and Dawson represent the unpaid portion of their shares of the purchase price for Martin's Point Plantation by the Partnership in December of 1973. The note held by Wadmalaw Island Land Company, Inc. was originally issued to Mr. Albert Fuchs to evidence the unpaid portion of the purchase price due him, and was subsequently assigned by Mr. Fuchs to Wadmalaw Island Land Company, Inc.

In 1978, Mr. Dawson instituted suit for the collection of his note by the foreclosure of the mortgage security interest held jointly by Dawson, Igoe, and Wadmalaw Island Land Company, Inc. Mr. Dawson joined Mr. Igoe and Mr. Fuchs as defendants in that action, and obtained a judgment ordering foreclosure of the owner's equity in Martin's Point Plantation. That judgment also sets forth the relationship of Messrs. Dawson and Igoe and the Wadmalaw Island Land Company, Inc., *inter se*, with respect to the proceeds of any such foreclosure.

Under that judgment, the creditors are to share the proceeds of any such foreclosure. Under that judgment, the creditors are to share the proceeds of any foreclosure pro rata, according to the outstanding principal amounts of their various creditor claims.

Mr. Igoe and Mr. Fuchs (the transferor to Wadmalaw Island Land Company, Inc. of the purchase money notes) are limited partners in the Debtor.

Mr. Dawson has objected to his claim being classified in the Class of Second Priority Secured Creditors, asserting that the other members of that class are also equity security holders and, therefore, the holders of claims which are not substantially similar to his claim.

Section 1122(a) of the Bankruptcy Reform Act of 1978 [11 U.S.C. § 1122(a)] provides:

"(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class."

The court, in *In Re Iacovoni*, 2 B.R. 256, 260 (Bkrtcy. D. Utah, 1980), in interpreting the above section, recently held that:

11 USC § 1122 provides that claims and interests may be classified in a particular class only if such claim or interest are "substantially similar". Reference to the legislative history makes clear that this section is a codification of current case law which requires "classification based on the nature of the claims or interests classified." H. R. Rep. No. 95–595, *supra* at 406. S. Rep. No. 95–989, *supra* at 118, U.S. Code Cong. & Admin. News, p. 5904.

Case law concerning classification of creditors prior to the enactment of Section 1122 was summarized by the court in *In Re Los Angeles Land and Investments, Ltd.*, 282 F.Supp. 448, 453 (D. Hawaii, 1968) aff'd., 447 F.2d 1366 (9th Cir. 1971), wherein it was stated:

"The Act requires the classification be in accordance with the 'nature' of the claim and in this determination it is necessary that the judge have discretionary powers. 'It is obvious from this language [of the statute] that Congress intended to give the court a broad latitude in the classification of debtors. Such classification, of course, should not do substantial violence to any claimant's interest, nor should it uselessly increase the number of classifications unless there be substantial differences in the nature of the claims.' *In the Matter of Palisades-on-the-Desplaines*, C.A. 7th (1937) 89 F.2d 214, 217."

"The test to be applied appears to be one directed toward a determination of the 'nature' of the claim. This would encompass an analysis of the legal character or the quality of the claim as it relates to the assets of the debtor. . . . 'All creditors of equal rank with claims against the same property should be placed in the same class.' *In Re Scherk v. Newton*, C.A. 10th (1945) 152 F.2d 747."

An examination of the claims of Mr. Dawson, Mr. Igoe, and the Wadmalaw Island Land Company, Inc., which are not substantially different in nature, indeed, of equal rank with each other, against the same property, indicates that under the above tests, these claims may be classified together. Prior to Martin's Point Plantation being sold to the Partnership, the property was owned by Messrs. Igoe, Dawson, and Fuchs (who later assigned his interest to Wadmalaw Island Land Company, Inc.), as joint tenants. Each had an undivided interest in the property as a whole. Together, the three men sold the property to the Partnership, each taking a note for the deferred portion of the purchase price, which notes were secured by one mortgage. The security interest of each of the creditors in the property was, and remains, equal in priority and subordinate to the security interest which The Federal Land Bank had in the property.

A reasonable description concerning the relationship between the interests of Messrs. Igoe and Dawson, and the Wadmalaw Island Land Company, Inc. as transferee of Mr. Fuchs, is that set forth in the Special Master's Report which was prepared

in conjunction with the foreclosure proceedings instituted by Mr. Dawson in Charleston, South Carolina. In that report, the Special Master stated:

"I find that said individual notes to [Dawson] and to the defendants, Igoe and Fuchs, were made, executed and delivered by the Defendant Partnership as part of a *single transaction* involving the sale of certain real estate jointly owned by [Dawson] and by the defendants Igoe and Fuchs to the Defendant Partnership and that the Defendant Partnership executed and [Dawson] and the defendants Igoe and Fuchs accepted several notes as part of the consideration for said land as part of a *common arrangement....*" [Emphasis supplied.]

The Special Master further found that the mortgage on the property was part of a "common scheme or plan by which the single mortgage secured the three several notes payable to [Dawson] and ... Igoe and Fuchs." Sept. Tr. pp. 25, 26.[2] That court awarded one single judgment of foreclosure, in effect merging the claims of the three creditors.

The apparent reasons of Mr. Dawson for objecting to the classification set forth in the Plan are that (1) Mr. Igoe and Mr. Fuchs are both creditors and limited partners of the Debtor, and (2) Mr. Dawson is entitled to seek a deficiency after a foreclosure. Each of these contentions will be discussed below.

A. *Partnership Interest*

Mr. Dawson claims that because Messrs. Igoe and Fuchs each own limited partnership units in the Debtor, the interests of Igoe and Wadmalaw Island Land Company, Inc. conflict with his, and should not be put in the same class. Yet, it is Wadmalaw Island Land Company, Inc., and not Mr. Fuchs, which is the creditor that has been placed in the same class as Mr. Dawson. Also, Wadmalaw Island Land Company, Inc. owns no partnership units in the Debt-

or. In addition, the one unit Mr. Igoe owns was obtained by him when it was taken in lieu of an interest payment in 1977, at a point in time when he could have legitimately refused to take such unit and demanded that the partnership pay him his interest. However, even if Wadmalaw Island Land Company, Inc. and Mr. Igoe had been partners from the very beginning, this fact still would not require that they be classified separately from Mr. Dawson.

Mr. Dawson argues that the limited partners of the Debtor may, under certain circumstances, be required to make certain contributions to the Partnership to pay creditors and that, as a result, Wadmalaw Island Land Company, Inc. (since Mr. Fuchs has a controlling interest in the company) and Mr. Igoe would want to resist a plan which called for this.

■ First, it appears that both Igoe and Fuchs stand to gain more than they would lose if the limited partners were required to contribute to the partnership; second, a limited partner cannot be held accountable for the general debts of the partnership, and, therefore, Igoe and Fuchs have no personal exposure for the general debts of the partnership; third, the law does not require that creditors of a class be homogeneous in all of their claims or interest in the debtor, but just that claims within a class be substantially similar; and fourth, it is well settled that, absent inequitable conduct, holders of an ownership interest in a debtor are not to be subordinated or treated differently from other creditors. See, *Frasher v. Robinson*, 458 F.2d 492, 493 (9th Cir. 1972); *Farmer's Bank of Clinton, Missouri v. Julian*, 383 F.2d 314 (8th Cir. 1967), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); and *Wages v. Weiner*, 381 F.2d 667 (5th Cir. 1967).

■ Even if the interest of Igoe and Fuchs, because of their equity security in-

2. References to the transcripts of the hearings held on July 21, 1980, August 14, 1980, and September 11, 1980, in this matter, shall be as follows:

Transcript of hearing held July 21, 1980 — July Tr. p.
Transcript of hearing held August 14, 1980 — Aug. Tr. p.
Transcript of hearing held Sept. 11, 1980 — Sept. Tr. p.

terest in the Debtor, diverged from Mr. Dawson's, this would still not require that their claims be classified differently. It is the "nature" of their claims being classified together that is significant, not the nature of other claims or interests a creditor might have. The Code merely requires that an equity interests which a party may have in a Debtor is to be placed in a class separate from a claim that that party may have against the Debtor. The Court has been cited to no authority to support the proposition that individuals or corporations having claims against a debtor are to be treated differently from other creditors simply because that person or corporation also has an equity interest in the Debtor. Indeed, the cases in this area indicate that a valid claim of a creditor who is also an equity security holder is not to be subordinated to the claim of a creditor who is not also an equity security holder, but is to be treated equally. See, *Frasher v. Robinson*, 458 F.2d 492, 493 (9th Cir. 1972) ("However, absent inequitable conduct, *bona fide* claims based upon loans from majority shareholders will not be subordinated to the claims of other creditors."); *Farmer's Bank of Clinton, Missouri v. Julian*, 383 F.2d 314 (8th Cir. 1967), *cert. denied*, 389 U.S. 1021, 88 S.Ct. 593, 19 L.Ed.2d 662 (1967); *Wages v. Weiner*, 381 F.2d 667 (5th Cir. 1967).

B. *Deficiency*

■ Mr. Dawson also contends that he should be classified separately because he is allegedly entitled to seek a deficiency under the judgment authorizing foreclosure if the property in question after sale does not provide sufficient funds to retire Mr. Dawson's debt in full. Mr. Dawson has not shown the Court that his claim is unique or different from the claims of Igoe and Wadmalaw Island Land Company, Inc. in this respect. While the Debtor does not admit that any of the three creditors classified in the Class of Second Priority Secured Creditors is entitled to a deficiency, the notes of the three creditors do not differ in this respect, and in the foreclosure collection proceeding instituted by Mr. Dawson, the Court in South Carolina made no such dis-

tinction. However, even if Mr. Dawson were entitled to a deficiency and the other two creditors were not, this fact would not in itself require that Dawson be classified separately from Mr. Igoe or the Wadmalaw Island Land Company, Inc. The Code provides that in order for creditors to be classified together, their interest need be only substantially similar and not identical. Hence, creditors who have security interest in the same property and whose interests are equal in priority, even though their interests arise out of different loan instruments containing different terms and conditions, including deficiency provisions, are normally classified together. *In Re Iacovoni*, 2 B.R. 256 (Bkrtcy. D. Utah, 1980); *In Re Los Angeles Land and Investment, Ltd.*, 282 F.Supp. 448, 453 (D. Hawaii, 1968) *aff'd.*, 447 F.2d 1366 (9th Cir. 1971).

The objection of Mr. Dawson to his claim being included in Class (B) with the other two claimants, secured by the same real property, each claim being equal in priority to the other, is denied.

### THE OBJECTION TO CONFIRMATION OF THE PLAN OF REORGANIZATION

■ The Plan of Reorganization filed with the Court on July 29, 1980, meets each of the requirements set forth in Section 1123 of the Code (11 U.S.C. § 1123) in that:

1. The claims of the creditors have been classified in accordance with Section 1122 of the Code;

2. The claims which have not been impaired have been specified;

3. The treatment of any class of claims or interest that is impaired under the Plan, has been specified;

4. The same treatment has been provided for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest; and

5. Adequate means for the Plan's execution have been provided, in that the Plan

calls for the transfer of all of the property of the estate to various entities pursuant to Section 1123(a)(5) of the Code.

In addition to fulfilling the requirements of Section 1123 of the Code concerning the contents of the Plan, the Debtor has also obtained the requisite number of acceptances under Section 1126 of the Code. Section 1126(c) provides in pertinent part that:

"(c) A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least ⅔ in amount and more than ½ in number of the allowed claims of each class held by creditors, . . . that have accepted or rejected such plan."

This test was met for each class of claims. In fact, except for Mr. Dawson, the voting creditors and equity security holders voted unanimously to accept the Plan. Because the Class of Second Priority Secured Creditors is composed of only three creditors— Mr. Igoe, Mr. Dawson, and the Wadmalaw Island Land Company, Inc.—and because Mr. Igoe and the Wadmalaw Island Land Company, Inc., who represent more than ⅔ in amount and ½ in number of the creditors of the class, voted to accept the Plan, the class, pursuant to Section 1126(c), is deemed to have accepted the Plan. As a result, the Debtor has obtained acceptances from all the classes set forth in the Plan.

The Plan having been accepted by all classes, the only remaining issue before the Court is whether the Plan should be confirmed pursuant to Section 1129 of the Code.

The only provision of Section 1129 concerning confirmation in controversy is subsection (a)(7) which provides:

"(a) The court shall confirm a plan only if all of the following requirements are met: . . .

(7) With respect to each class—

(A) each holder of a claim or interest of such class—

(i) has accepted the plan; or

(ii) will receive or retain under the plan on account of such claim or interest, property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date . . ."

The undisputed testimony at the hearings held on July 21, 1980, and September 11, 1980, indicates that that requirement has clearly been satisfied under the Plan.

The Plan of Reorganization provides that the Debtor will convey all of its right, title and interest in Martin's Point Plantation and all of its interest in 13,000 shares of stock in The Federal Land Bank Association of Walterboro to Harold E. Igoe, C. Stuart Dawson, Jr., and the Wadmalaw Island Land Company, Inc., in full and complete satisfaction of the indebtedness owing by Martin's Point Limited Partnership and any of its partners to each of the transferees. Conveyance to such parties is to be in the following percentages of undivided interests:

| | |
|---|---|
| C. Stuart Dawson, Jr. | 31.68% |
| Harold E. Igoe, Jr. | 34.16% |
| Wadmalaw Island Land Company, Inc. | 34.16% |

Conveyance of the property is to be made subject to the first mortgage of The Federal Land Bank.

As regards the objection interposed at the hearing on confirmation, held on September 11, 1980, Mr. Dawson has contended that, by receiving a 31.68% interest in Martin's Point Plantation, he is receiving less than he would receive in a liquidation under Chapter 7 of the Bankruptcy Code. Mr. Dawson's assertion ignores the value of Martin's Point Plantation, which appears to presently exceed the debt. Mr. Dawson has failed to prove that a deficiency is likely should a Chapter 7 case ensue, or that the value under the Plan would be less than the value which might be received under Chapter 7.

The claims of Messrs. Dawson and Igoe, and the claim of Wadmalaw Island Land Company, Inc., are secured by a single, second-priority mortgage on Martin's Point Plantation. Accordingly, except to the extent that the mortgage secures a penalty

avoidable under Sections 724(a) and 726(a)(4), the proceeds of liquidation of the property would be paid to the holders of secured claims in order of their priority, i. e., to The Federal Land Bank the extent of its claim, with any excess being paid pro rata to Dawson, Igoe, and Wadmalaw Island Land Company, Inc. If the value of the property exceeded the amount of the secured debt and Mr. Dawson received his pro rata share of such proceeds, his claim would be discharged in full. The Plan would provide Mr. Dawson with a 31.68% interest in the land, as opposed to the proceeds of the sale of the land. Accordingly, the initial step in the analysis should be a determination of the fair market value of the land.

Mr. Frank Parker Hudson, Jr., an expert called on behalf of the Partnership, testified:

"My opinion of the value today is between—and I like to speak in ranges—I would say on the low side of at least $2,200 an acre, which equates to a little over $1,200,000, and I would feel comfortable with the possibility of a sale of around $2,400 an acre, which would be, say, $1,350,000." July Tr. p. 61.

Mr. C. O. Thompson, a second expert called on behalf of the Partnership, concurred with Mr. Hudson when he testified that the subject property was worth One Million Two Hundred Thousand Dollars ($1,200,000.00). Sept. Tr. p. 77. He also added, however, that "I think that it's a reasonable possibility that there exists in the market place a buyer who would pay substantially more for that, for the property ..." Sept. Tr. p. 77.

The testimony of Messrs. Thompson and Hudson indicates that Martin's Point Plantation has a fair market value in the range of $1,200,000.00 to $1,350,000.00. As of the date of the hearing on confirmation, the total amount of the secured claims held by the Class of first Priority Secured Creditors and the Class of Second Priority Secured Creditors was $1,103,799.00. When the fair market value of Martin's Point Plantation is compared with that amount, there is a

minimum equity in the property of some $96,201.00. True, the interest debt is rising, but the testimony is that the monthly inflation value of the property equals or exceeds such increase in the debt.

Mr. Dawson will receive under the Plan a value no less than he would receive in liquidation under Chapter 7. Thus, Section 1129(a)(7)(A)(ii) is satisfied.

Each of the standards of confirmation of Section 1129(a) having been satisfied, the Plan of Reorganization is confirmed.