## In re COMTEC INDUSTRIES, INC., Debtor.

### Bankruptcy No. 84-03081S.

United States Bankruptcy Court, E.D. Pennsylvania.

Oct. 3, 1988.

Lawrence J. Tabas, Phila., Pa., for trustee.

Robert J. Wilson, Philadelphia, Pa., for claimant.

Jonathan Ganz, Philadelphia, Pa., for debtor.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

The instant case presents our second major encounter with wage claims, following our decision in *In re Konidaris*, 87 B.R. 846 (Bankr.E.D.Pa.1988). In *Konidaris*, the claimant was, however, a sympathetic figure: a waitress who had foregone her salary for two years to attempt to help her restaurant employer to survive. Here, the claimant is much less of a sympathetic figure: he is the former President and sole investor, stockholder, officer, and director of the Debtor who, after the demise of his business, retroactively and unilaterally decided that his services, over the three years of the Debtor's existence, deserved to be compensated at $1,000.00 weekly. We have little difficulty in concluding that such a claimant as is presented here is precluded from making a priority claim and that all of his claims must be subordinated to those of other creditors, if not denied.

This Chapter 7 case was filed on September 17, 1984, shortly after the Debtor ceased doing business. The principal business of the Debtor, since its founding by the Claimant, Stephen Comroe (hereinafter referred to as "the Claimant"), in October, 1981, had been marketing a patented invention of the Claimant which was picturesquely called the "fishgrabber." The "fishgrabber" is utilized to "fish" wires from

walls in performing electrical contracting work.

On November 12, 1984, the Claimant filed the two Proofs of Claim in contest: one a priority claim in the amount of $2,000.00 for wages allegedly due for the weeks of September 7, 1984, and September 14, 1984, and the other an unsecured claim in the amount of $145,000.00 for wages allegedly due from October 2, 1981, through August 31, 1984. On May 13, 1988, inexplicably subsequent to the approval of the Trustee's Final Account on December 14, 1987, following the Final Audit Hearing in the case, the Trustee filed a "Motion" objecting to the claims because they failed to even remotely contain the detail called for in Official Bankruptcy Form No. 29 for wage claims and requesting that the claims be denied or subordinated. Indeed, the claim forms submitted, far from adhering to the above Official Form, included no information other than the amounts and dates covered by the claims.

After two continuances, the matter came before us for a hearing on August 23, 1988. After a hearing, at which the sole witnesses were the Claimant and the Debtor's former secretary and "record keeper," Cecelia Wood, we accorded the Claimant and the Trustee the opportunity to simultaneously file Opening Briefs and Reply Briefs on or before September 6, 1988, and September 13, 1988, respectively. The Claimant filed his Brief on September 6, 1988. The Trustee was granted an extension until September 16, 1988, to file a reply.

Ms. Wood testified that the Debtor had, throughout its existence, three employees in addition to salesman working strictly on a commission basis: Fred Evers, who was paid $1,500.00 weekly; Ms. Wood herself, who was paid $180.00 weekly; and the Claimant, who was not paid at all except for receipt of reimbursement for expenses, but who was its sole shareholder as the result of his making a $16,200.00 "loan" to the business for start-up capital.

Although she had written out the Proofs of Claim forms, when asked how she determined to claim compensation at $1,000.00 weekly for the Claimant, Ms. Wood stated that she was "not sure where he (the Claimant) got this figure," as no checks had ever been written to the Claimant, nor had any sum for his salary ever been carried on the Debtor's books. Obviously, this figure was dictated to her by the Claimant.

The Claimant contended that his long work hours and "loans" justified a salary of at least two-thirds that received by Mr. Evers. He did, however, concede that he was paid "in excess of $10,000.00" annually during the period that the Debtor was in business as an officer of an incorporated electrical contracting business which shared space with the Debtor. The Trustee questioned the judgment of the Debtor in paying $78,000.00 annually to Mr. Evers, let alone an additional $52,000.00 annually to the Claimant, when the Debtor's gross profits were marginal and it regularly suffered losses.

■ Neither party addresses the issue of the Claimant's right, as an officer of the Debtor, to a priority claim pursuant to 11 U.S.C. § 507(a)(3), which reads as follows:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

.    .    .    .    .

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

Collier states that, as in its predecessor, § 64(a)(2) of the Bankruptcy Act, former 11 U.S.C. § 104(a)(2), the policy behind the priority set forth in § 507(a)(3) is to favor those who are need of protection because of the loss of wages caused by a bankruptcy and who could not have been expected to investigate their employer's creditworthiness before accepting employment. 3 COLLIER ON BANKRUPTCY, ¶ 507.04[3][b], at 507–27 to 507–28 (15th ed.

1988), quoting *Blessing v. Blanchard,* 223 F. 35, 37 (9th Cir.1915); and *In re Lawsam Electric Co.,* 300 F. 736, 736 (S.D.N.Y. 1924). *Cf. Konidaris, supra,* 87 B.R. at 857 (post-petition wages are a Congressionally-favored category of administrative claims).

Numerous cases decided under the Bankruptcy Act were consistent with the principles set forth in the controlling opinion of the Third Circuit Court of Appeals that wage-claim priorities are allowable to only "those who work, labor, or serve in more or less subordinate capacities" and not to "the active officers or managers of a corporation or business...." *In re Ko–Ed Tavern, Inc.,* 129 F.2d 806, 809 (3d Cir.1942). *Accord, e.g., In re Progressive Luggage Corp.,* 34 F.2d 138, 138–39 (2d Cir.1929); *In re Bush Terminal Printing Corp.,* 32 F.2d 264, 265 (2d Cir.1929); *Blessing, supra,* 223 F.2d at 37; *In re Marshall E. Smith & Bros., Inc.,* 35 F.Supp. 56, 57 (E.D.Pa.1940); *Lawsam Electric, supra,* 300 F. at 736; and *In re Industrial Car Manufacturing Co.,* 1 B.R. 339, 345–46 (Bankr.E.D.Pa. 1979).

We have, rather remarkably, found no cases decided under the Bankruptcy Code which address this issue. However, we find nothing in the legislative history of the Code to cause us to conclude that Congress meant to change the clearly-defined dichotomy between subordinate wage-earners entitled to priority and managerial officers who are not. *See United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.,* —— U.S. ——, 108 S.Ct. 626, 634, 98 L.Ed.2d 740 (1988); *Kelly v. Robinson,* 479 U.S. 36, 107 S.Ct. 353, 358–60, 93 L.Ed.2d 216 (1986); and *Midlantic National Bank v. New Jersey Dep't of Environmental Resources,* 474 U.S. 494, 500–01, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986) (It is assumed that principles established under interpretation of the Bankruptcy Act carry over to comparable Code provisions in the absence of any indications to the contrary).

The most pertinent passage in the legislative history of the Code which we could locate is the following:

Paragraph (3) [§ 507(a)(3)] expands and increases the wage priority found in current section 64a(2). The amount entitled to priority is raised from $600 to $2400. The former figure was last adjusted in 1926. Inflation has made it nearly meaningless, and the bill brings it more than up to date. The three-month limit is retained, but is modified to run from the earlier of the date of the filing of the petition or the date of the cessation of the debtor's business. The priority is expanded to cover vacation, severance, and sick leave pay.

H.R.REP. No. 595, 95th Cong., 1st Sess. 357 (1977); S.REP. No. 989, 95th Cong., 2nd Sess. 69 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5855, 6313. The only "expansion" effected in the Code was in the measure of the 90–day period and the express reference to vacation, severance, and sick pay. The only "increase" was in the amount which could be claimed, due to inflation. Therefore, we conclude that the restriction of the scope of the Act's priority wage claims to parties that perform labor in a subordinate capacity as opposed to managers and directors of a corporate debtor remains viable. *Compare Konidaris, supra* (wage claimant was obviously a subordinate laborer).

▪ Recognition of this distinction eliminates any potential that the Claimant here is entitled to a priority wage claim on the basis of § 507(a)(3). He was the sole entrepreneur of the entire commercial venture of the Debtor. As such, he is barred from receiving any priority in his wage claims.

▪ The second issue is whether the Claimant is entitled to any claim at all or whether his claim should be subordinated to that of other creditors. We conclude that, at the very least, his claims must be subordinated, on several different grounds.

The principles underlying subordination of an insider's claims against a debtor are well-articulated in *Pepper v. Litton,* 308 U.S. 295, 306–10, 60 S.Ct. 238, 245–47, 84 L.Ed. 281 (1939). There, the court did not hesitate to disregard even a state-court judgment which supported an insider's salary claim. *Compare Heiser v. Woodruff,*

327 U.S. 726, 732–33, 66 S.Ct. 853, 855–56, 90 L.Ed. 970 (1946) (bankruptcy court bound by *res judicata* effect of state-court judgment in absence of contrary equitable principles). Instead, the Court found controlling the conclusion that a director of a corporation

> is a fiduciary ... [whose] dealings with the corporation are subjected to rigorous scrutiny and where any of their contracts ... with the corporation is challenged the burden is on the director or stockholder not only to prove the good faith of the transaction but also to show its inherent fairness from the viewpoint of the corporation.

308 U.S. at 306, 60 S.Ct. at 245. Thus, so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder.

*Id.* at 309–10, 60 S.Ct. at 246.

These principles are codified in 11 U.S.C. § 510(c) of the Bankruptcy Code, 3 COLLIER, *supra,* ¶ 510.05, at 510–8; and H.R. REP. No. 595, *supra,* at 359, which provides as follows:

> (c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—
>> (1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or
>> (2) order that any lien securing such a subordinated claim be transferred to the estate.

The Claimant accurately points out that, although equitable subordination is a concept which was developed in the context of insider claims against a debtor-estate, it cannot be applied to deny every claim of an insider. This court, in *In re W.L. Bradley Co.*, 75 B.R. 505, 512 (Bankr.E.D.Pa.1987); and *In re American Apparel, Inc.*, 55 B.R. 160, 162 (Bankr.E.D.Pa.1982), has adopted the formulation of a tripartite test for when it is appropriate to apply principles of

equitable subordination established in *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir.1977), as follows:

> (i) The claimant must have engaged in some type of inequitable conduct. *Comstock v. Group of Institutional Investors*, 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911, 1923 (1948); *Spach v. Bryant*, 309 F.2d 886, 889 (5th Cir. 1961); *Frasher v. Robinson*, 458 F.2d 492, 493 (9th Cir.1972), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. *Comstock v. Group of Institutional Investors*, 335 U.S. at 229, 68 S.Ct. at 1463, 92 L.Ed. at 1923; *In re Branding Iron Steak House*, 536 F.2d 299, 302 (9th Cir.1976); *In re Brunner Air Compressor Corp.*, 287 F.Supp. 256, 265 (N.D.N.Y.1968); *see Wages v. Weiner*, 381 F.2d 667, 670 (5th Cir.1967).

> (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act. *Luther v. United States*, 225 F.2d 495, 499 (10th Cir.1955), *cert. denied,* 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *In re Columbia Ribbon Co.*, 117 F.2d 999, 1002 (3d Cir.1941), *see American Mutual Life Ins. Co. v. City of Avon Park, Florida*, 311 U.S. 138, 145, 61 S.Ct. 157, 161, 85 L.Ed. 91, 95 (1940), *quoting SEC v. United States Realty & Improvement Co.*, 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293, 1303 (1940); *In re Texas Consumer Finance Corp.*, 480 F.2d 1261, 1265 (5th Cir.1973).

*See also, e.g., In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir.1986); *In re Multiponics, Inc.*, 622 F.2d 709, 713 (5th Cir.1980); and *In re Central Pacific Boiler & Piping, Ltd.*, 81 B.R. 40, 44 (Bankr.D. Hawaii 1987).

We believe that there are three distinct lines of reasoning supporting the conclusion that subordination, if not outright denial of the claim, would be appropriate here.

The first line of reasoning is articulated in a very analogous factual situation in *In re Breezewood Acres, Inc.*, 28 B.R. 32 (Bankr.M.D.Pa.1982). There, the President and majority stockholder of the debtor attempted to claim a salary of $1,000.00 weekly established formally by the debtor's Board of Directors, but never collected by the claimant over the four years of the debtor's existence. The failure of the claimant to collect this "salary" at any time over this four-year period and his role as the sole active director of the debtor was held to serve as the basis for the court "to draw the inference that the salary of $1,000.00 a week did not actually represent the worth of [the claimant's] services to the debtor at any time but is merely an arbitrary figure used only for record-keeping purposes." *Id.* at 34. The court proceeded, on the basis of the foregoing conclusion, to deny the claim outright.

The Claimant here, it will be recalled, failed to comply with the prescribed Official Form in setting forth his wage claim. The Trustee's objection called him on this and put the Claimant to his proof of establishing his claim. *See Konidaris, supra,* 87 B.R. at 851; and *In re Lewis*, 80 B.R. 39, 41 (Bankr.E.D.Pa.1987).

The Claimant failed to meet this burden. He presented an even weaker case for justification of his "salary" than the claimant in *Breezewood Acres*. Here, there was not even the formality of the establishment of the Claimant's salary by any action of the Debtor's Board of Directors. No wages were carried on the Debtor's books nor was even any informal action taken until after the fact, at the time when the claims were filed, as attested to by Ms. Wood, the Claimant's own witness. It was therefore only due to the grossest sort of self-serving manipulation by the Claimant himself that this claim even came into existence.

The only "equitable" basis for the claim at all is a contention by the Claimant that the Debtor had impliedly contracted to pay him because he worked so hard for it. However, in *Vernars v. Young*, 539 F.2d 966, 968 (3d Cir.1976), the Court of Appeals adopted the conclusion of the district court that "under Pennsylvania law an officer or director cannot recover compensation from the corporation under the theory of implied contract."

A separate line of reasoning running against the Claimant's cause emerges from cases concluding that a stockholder's contributions to his or her closely-held corporation are cash and "sweat" equity, rather than a loan or compensable services, respectively. *See Whitlock v. Hause*, 694 F.2d 861, 868 (1st Cir.1982); *McDonell v. Sampsell*, 193 F.2d 954, 956 (9th Cir.1952); and *In re Fleet, (Fleet v. Rhode, et al.,)* 89 B.R. 420 (E.D.Pa.1988) (adopting Report and Recommendation of Bankruptcy Judge, Bankr. No. 81–04969S, Adv. No. 87–0394S, slip op. at 16 (Bankr.E.D.Pa. May 10, 1988)). The Claimant here thinly capitalized the Debtor's venture on the risky prospect of the success of his invention. He stood to be the sole beneficiary of the winnings if the venture proved successful. Therefore, he should be compelled to shoulder the losses in light of its failure. The creditors were not joint venturers. They would not have stood to share in the Debtor's success, and they should not be asked to share the losses equally with the Claimant in its failure. The Claimant's status is most properly analogized to that of a shareholder and, in a Chapter 7 business liquidation, a shareholder can hardly expect to obtain distribution prior to or equal to creditors. *See* 11 U.S.C. § 726.

As a final line of reasoning, we note that the most factually analogous cases, based solely on 11 U.S.C. § 510(c), conclude that claims of the insiders in issue should be subordinated. The closest case factually is *American Apparel*, where former Chief Judge Emil F. Goldhaber of this court considered an insider's claims for, *inter alia*, fees under a pre-incorporation agreement, and rejected these claims because he found them to be a secret consultant agreement. He concluded that the existence of such a secret agreement constituted inequitable conduct within the meaning of § 510(c).

The wage claim of the Claimant here is even more contrived than that of the claimant in *American Apparel*. It was not only

secret but not-existent until it sprung from the Claimant's head after the Debtor had failed.

Similarly, the *N & D Properties* court reinstated the bankruptcy court's determination that the rights of a large shareholder, albeit an unsophisticated individual who, with some force, characterized herself as a passive victim of the major shareholder's mismanagement, should be subordinated to other creditors. 799 F.2d at 732–33. Also instructive is the holding in *Costello v. Fazio*, 256 F.2d 903, 906–11 (9th Cir.1958), wherein the court held that stockholders who were responsible for undercapitalization of a corporation were guilty of such inequitable conduct that their claims were properly subordinated to those of other creditors. The Claimant here, as the sole investor of but $16,200.00 into the Debtor corporation, is chargeable with the same sort of inequitable undercapitalization of the instant Debtor.

We thus have no difficulty in concluding that the Claimant's attempt to create a heretofore secret claim and his under-capitalization of the Debtor constituted inequitable conduct under the first prong of the *Mobile Steel* test. Clearly, the Debtor's conduct injured the creditors and his claim here is an attempt to create a "heads, I win; tails you lose" relationship with the creditors which clearly constitutes an attempt to take unfair advantage of them. This satisfies the second prong of the *Mobile Steel* test. The third prong is also clearly satisfied, as there is nothing inconsistent with the Code in reaching this result.

We therefore conclude that, under the three-part test for application of § 510(c) set forth in *Mobile Steel*, as well as the reasoning of *Breezewood Acres* under which the similarly-situated shareholder-director's claim was denied outright, and under the theory that the Claimant's labors were an investment from which he stood to gain a great deal if the venture succeeded and therefore must accept the losses resulting from its failure, the Claimant's rights must, at the least, be subordinated to those of other creditors. The Trustee advises that the estate's assets total but $24,000.00, and that unsecured claims other than those of the Claimant total in excess of $130,000.00. Hence, subordination will result in no recovery to the Claimant, just as would denial of the claims outright. Since the Trustee requests only the more conservative remedy of subordination rather than denial of claims, we shall frame our attached Order in that fashion.

### ORDER

AND NOW, this 3rd day of October, 1988, after a hearing of August 2, 1988, on the Motion of Trustee objecting to the Proofs of Claim of Steve Comroe (hereinafter referred to as "the Claimant"), Claim No. 6 and Claim No. 7, and upon consideration of the Briefs of the parties, it is hereby ORDERED AND DECREED as follows:

1. The Motion of the Trustee is SUSTAINED.

2. Claim No. 6 is reclassified as an unsecured claim.

3. The Claimant's remaining unsecured claims of $147,000.00 are subordinated to the rights of all of the other unsecured claims of the Debtor.