### In re WANG LABORATORIES, INC., Debtor.

#### Bankruptcy No. 92–18525.

United States Bankruptcy Court,
D. Massachusetts.

Feb. 10, 1994.

Carlene J. Gatting, Lawrence V. Gelber, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for Wang Laboratories, Inc.

## DECISION RE PRIORITY OF CLAIMS OF CERTAIN INDEPENDENT CONTRACTORS

WILLIAM C. HILLMAN, Bankruptcy Judge.

Claims were filed by a number of individuals and firms who performed services for the debtor ("Wang") other than as employees. Wang objected to the claims as to the alleged priority only. Wang concedes that the amounts claimed are in fact due. Wang and the claimants agree that the claimants are all independent contractors having no employer/employee relationship to Wang.

Wang does not contend that the services were rendered beyond 90 days of the filing of the petition and Wang never ceased operation of its business; hence there is no objection to those elements and to that extent they must be deemed allowed. 11 U.S.C. § 502(a); Fed.R.Bankr.P. 3001(f).

There is no dispute of fact; only the legal issue of priority remains.

One claim included in the bulk objection does not seek priority as a wage claimant. John E. Elfrank asserts a secured status but did not support that status when Wang objected. His claim will be allowed only as a general unsecured claim.

The other claimants asserted priority under 11 U.S.C. § 507(a)(3):

"(a) The following expenses and claims have priority in the following order:

"(3) Third, allowed unsecured claims for *wages*, salaries, or commissions, including vacation, severance, and sick leave pay—

"(A) *earned by an individual* within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first, but only

"(B) to the extent of $2,000 for each such individual."

11 U.S.C. § 507(a)(3). (emphasis added).

■ One of the claimants in this group was a corporation. Because the statute speaks of "individuals" corporations are not entitled to the wage priority under § 507(a)(3). · *In re Kasson, Inc.,* 109 B.R. 352, 353 n. 1 (Bankr.E.D.Wis.1989); *In re Dahlman Truck Lines, Inc.,* 59 B.R. 218, 219 (Bankr.W.D.Wis.1986). The claim of Conlon Group, Inc. is allowed only as a general unsecured claim.

The more difficult question is whether the natural persons who performed services for Wang as independent contractors are entitled to the "wage" priority to the extent of $2,000 each. Because of the statutory cap on wage recoveries, the amount for which priority is sought aggregates $18,907.00. A list of the affected claimants and the amounts in issue appears in the appendix.

### History of the wage priority

Mr. Justice Black, in his dissent in *United States v. Embassy Restaurant, Inc.,* 359 U.S.

29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959), offered this summary of the early development of wage priorities under bankruptcy law:

> "The history ... is one of continuous congressional expansion. Priority for the 'full amount of the wages due' on account of 'any labor as an operative in the service of any bankrupt' was first granted in the 1841 Bankruptcy Act; it was limited to $25. The Bankruptcy Acts of 1867 and 1898 increased the sum available to each claimant and broadened the coverage of the priority beyond 'operatives' or 'workmen' to 'workmen, clerks, or servants.'"

359 U.S. at 35–36, 79 S.Ct. at 557–58 (dissent). (footnotes omitted).

The cases, to the extent that we find them in the sparse bankruptcy case law of the time, imposed a strict test on the interpretation of the covered classes. *See In re Scanlan,* 97 F. 26, 27 (D.Ky.1899) (A traveling salesman was not included in the wage priority for wages due a workman, clerk, or servant because the definition of these terms in Webster's and the Century Dictionaries was strictly construed to exclude traveling salesmen); *In re Greenewald,* 99 F. 705, 706 (E.D.Pa.1900) (The scope of the words "workman", "clerk", or "servant", should be determined in part by their modern usage and not exclusively as defined by lexicographers. Even given their modern common usage, the terms did not include traveling salesmen); *In re Collin,* 18 F.Supp. 848 (S.D.N.Y.1937) (A traveling salesman's claim might be denied priority status if the salesman is found to be a "separate contractor").

Returning to Justice Black's narrative:

> "In 1906 Congress brought still more workers into the protected category by defining the group as 'workmen, clerks, traveling or city salesmen, or servants.' The priority was once again increased, now to $600, in 1926.

> "The Chandler Act passed in 1938 raised the workers' priority to second behind expenses of administration and ahead of federal and local taxes. At the same time its scope was further broadened to cover 'workmen, servants, clerks, or traveling or city salesmen on a salary or commission basis, whole or part time, whether or not selling exclusively for the bankrupt.'"

359 U.S. at 36, 79 S.Ct. at 558 (dissent). (footnotes omitted).

Even at these early times, the equivalent of manufacturers' representatives existed, but they were sometimes denied the benefits of the wage priority even though they technically fit within the definition of "salesman ... on a commission basis." *See, e.g., In re Kominers,* 252 F. 183, 184 (S.D.N.Y.1916) (Claimants who could control their time as they pleased, were compensated on a commission basis, had their own office and business cards were not traveling salesmen within the meaning of the Act, and therefore not entitled to wage priority).

Congress found the cases to be confusing in that they contained "language from which one might infer that a salesman who was a 'separate contractor' could not qualify". H.R.Rep. No. 921, 84th Cong., 1st Sess. 2, cited in the *Embassy Restaurant* dissent at note 8. To correct the situation, a final clause added in 1956 made the Congressional intent crystal clear:

> "[A]nd for the purposes of this clause, the term 'traveling or city salesman' shall include all such salesmen, whether or not they are independent contractors selling the products or services of the bankrupt on a commission basis, with or without a drawing account or formal contract."

70 Stat. 725 (1956).

Justice Black again:

> "This last change in the priority section was the sole subject of a very short Act passed by Congress. Like most of the earlier changes, it was enacted after court decisions barring some workers from the protected class or indicating that others might be barred. We should, I think, be warned by the foregoing history of the wage priority against niggardly interpretations of the language used in that section."

359 U.S. at 36–37, 79 S.Ct. at 558 (dissent). (footnotes omitted).

Why this emphasis on analysis of Congressional intent contained in a dissent? In *Embassy* the Supreme Court held that contributions by an employer to union welfare funds

which were required by a collective bargaining agreement were not entitled to priority in payment in bankruptcy as "wages". The case was intentionally overruled by Congress. "[Section 507(a)(4) ] overrules *United States v. Embassy Restaurant.*" H.R.Rep. No. 595, 95th Cong., 1st Sess. 357 (1977); *Id.* at 187, quoting from Justice Black's dissent.

After all of the amendments the Act provides that "wages and commissions" includes the compensation paid to salesmen "whether or not they are independent contractors." We also find that, while the issue of the necessary nexus between the claimant and the employer seldom was addressed, the courts before *Embassy Restaurant* had little difficulty in expanding the concept of "wages" to include all benefits received by an employee. *Division of Labor Law Enforcement v. Sampsell,* 172 F.2d 400, 402 (9th Cir.1949) (vacation pay constituted "wages"); *In re Public Ledger, Inc.,* 161 F.2d 762, 771 (3d Cir.1947) (where labor contract provided for vacation with pay, all vacation with pay earned throughout period of services constituted "wages"); *In re Wil–Low Cafeterias, Inc.,* 111 F.2d 429, 431–432 (2d Cir.1940) (a vacation with pay is in effect an addition to wages); *In re Kinney Aluminum Co.,* 78 F.Supp. 565, 568 (S.C.Cal.1948) ("wages" includes vacation pay and pay in lieu of vacation).

*Public Ledger, supra* at 770, also held that severance pay was a form of wages. *See also In re Elliott Wholesale Grocery Co.,* 98 F.Supp. 1017, 1018–19 (S.D.Cal.1951), *aff'd sub nom. McCloskey v. Division of Labor Law Enforcement,* 200 F.2d 402, 403 (9th Cir.1952).

Back pay awards were also held to be "wages". *National Labor Relations Board v. Killoran,* 122 F.2d 609, 614 (8th Cir.1941), *cert. denied* 314 U.S. 696, 62 S.Ct. 412, 86 L.Ed. 556 (1941); *Nathanson v. National Labor Relations Board,* 344 U.S. 25, 29, 73 S.Ct. 80, 83, 97 L.Ed. 23 (1952) ("We can find in the Bankruptcy Act no warrant for giving these back pay awards any different treatment than other wage claims enjoy").

It is against this background that we must examine what followed.

### The Road to the Code

■ We are instructed that "the best method of using the legislative history to aid interpretation of a section of the Code is to begin with the most recent statement of authority and delve backward through the legislative process". Kenneth N. Klee, Legislative History of the New Bankruptcy Law, 28 DePaul L.Rev. 941, 957 (1979). I have followed the prescribed path and have found little to light the way.

The Code language derives from H.R. 8200, 95th Cong., 1st Sess., and from S. 2266, 95th Cong., 2d Sess. The text of § 507(a)(3) in H.R. 8200 is identical to that section as enacted except that the priority cap was set at $2,400. In S. 2266 the amount was $1,800, but it is otherwise identical to the final text. Both the House and Senate Judiciary Committee Reports state that the new language "expands and increases the wage priority." H.R.Rep. 95–595, 95th Cong., 1st Sess. 356; S.Rep. 95–989, 95th Cong., 2d Sess. 69, U.S.Code Cong. & Admin.News 1978, pp. 5787, 5855, 6311. No further guidance is to be found.

There are two elements to the interpretation of "wages" as found in the statute—what is the nature of the payments covered, and to whom are such payments made. As the cases under the Act demonstrated, there was much litigation about the first issue and little regarding the latter. But if "expand and increase" has any meaning, it must subsume the conclusion that independent contractor salesmen continue to be covered. There is not a hint in the legislative history to indicate that coverage was being reduced.

■ Who, then, are the individuals who have earned priority status? I believe a fair reading is that independent contractors are included in the preferred class, and that the Code had increased the reach of that provision by eliminating the restriction to "traveling or city salesmen".

### Cases under the Code

There is language in some cases under the Code requiring a master-servant relationship between the purported wage claimant and

the debtor. For example, *In re Grant Industries Inc.*, 133 B.R. 514, 515 (Bankr. W.D.Mo.1991), contains the broad statement that "the key distinction is between those claimants who are truly engaged in a master/servant relationship with the debtor and those who are engaged in a contractual relationship with the debtor," but the claimant appeared to be a temporary help agency not entitled to the benefits of the section in any event.

Another ruling barred priority for commissions of an independent contractor outside salesman, relying upon cases decided prior to the 1956 amendment, and holding that nothing was changed by the adoption of the Code. *In re American Shelter Systems, Inc.*, 40 B.R. 793 (Bankr.W.D.La.1984). I believe that decision is incorrect.

Judge Scholl's decisions cut both ways. His ruling in *In re Konidaris*, 87 B.R. 846 (Bankr.E.D.Pa.1988) would extend the wage priority to one who was employed not by the debtor but by a (perhaps) undisclosed principal of the debtor. On the other hand, his later rulings would limit the wage priority to parties that perform labor in subordinate capacities, as opposed to managers and directors of corporate debtors, *In re Comtec Industries, Inc.*, 91 B.R. 344 (Bankr.E.D.Pa. 1988), or to cases where the debtor exercised "a substantial measure of control over the claimant's conduct". *In re Saint Joseph's Hospital*, 126 B.R. 37, 43 (Bankr.E.D.Pa. 1991). Under the latter cases he would certainly deny priority to independent contractors, but I cannot accept his interjection of the subservience or control elements into § 507. *See In re Jade West Corp.*, 53 B.R. 16 (Bankr.D.Ore.1985) (any employee entitled to wage priority, regardless of the capacity in which he served). Perhaps the control issue was relevant under the Act, where we were concerned with "workmen, servants, and clerks", as in *In re Progressive Luggage Corp.*, 34 F.2d 138 (2d Cir.1929), upon which Wang relies, but we now address ourselves to the compensation of "individuals".

"In construction of code provisions relating to wage priorities courts have liberally construed the statutes to accord possible intent of Congress by giving broad meaning to the provisions of the Code as to relate to the facts rather than narrow restrictive meanings." *In re Seventh Avenue South, Inc.*, 10 B.R. 289, 291 (Bankr.W.D.Va.1981).

I find that, in broadening the class of persons to whom the wage priority might be applied from "workmen, servants, clerks, or traveling or city salesmen" to encompass all natural persons, Congress intended similarly to open the scope of "wages" to include compensation paid to such persons, whether employees or independent contractors. The meaning must be derived from the context and not taken either in the abstract or from another context.

### Conclusion

I find that the claimants listed in the appendix are entitled to the wage priority to the extent provided by § 507(a)(3). An appropriate order will enter.

### APPENDIX

| Claimant (Claim #) | Claim Amount | Maximum Priority |
| --- | --- | --- |
| J.J. Bitsack (0374) | 14,400.00 | 2,000.00 |
| J.H. Carey (3158) | 402.00 | 402.00 |
| A. Crook (1163) | 8,355.00 | 2,000.00 |
| R. Gonzalez (0715) | 6,560.00 | 2,000.00 |
| M. Harkin (0255) | 930.00 | 930.00 |
| C. Kenny (2158) | 2,000.00 | 2,000.00 |
| L. Loomis (0346) | 3,520.00 | 2,000.00 |
| J.W. Reedy (3223) | 17,845.25 | 2,000.00 |
| A.C. Stillman (0615) | 1,575.00 | 1,575.00 |
| B.V. Tauber (1981) | 21,200.00 | 2,000.00 |
| H. Van Der Scheer (0377) | 5,211.00 | 2,000.00 |
|  | 81,998.25 | 18,907.00 |