In re Assignment of Merrick Dairy Company: Brook Hill Farm and others, Claimants, Appellants, vs. Bort, Receiver, Respondent.

*September 11—October 22, 1946.*

For the appellants there were briefs by *Martin Burns* of Chicago, Illinois, and *McGowan & Geffs* of Janesville, attorneys for the Brook Hill Farm and the Pure Milk Association, and by *Dougherty, Grubb & Ryan* of Janesville, attorneys for Fay L. Merrick, Roy L. Merrick, Earl Merrick, and Louella Parrish, and oral argument by *George Geffs, Jacob Geffs,* and *Paul N. Grubb, Jr.*

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Henry Knipp,* all of Janesville.

A brief was also filed by *Ela, Christianson & Ela* of Madison, attorneys for the Wisconsin Council of Agriculture Co-operative, and by *George M. St. Peter* of Fond du Lac, attorney for the Pure Milk Products Co-operative, as *amici curiæ.*

FAIRCHILD, J.  The appellants Brook Hill Farm and the Pure Milk Association join in the contention that inasmuch as they are producers of dairy products delivered to the Merrick Dairy Company, each is entitled to a preference as to its whole claim along with limited labor claims allowed by statute (sec. 128.17 (1) (c)) out of the estate after payment of necessary costs of preservation and administration.

The favorable position claimed for the producers of dairy products in the distribution of assets, to whatever extent it exists, results from an act of the legislature which provides for a preference in the following words:

"The whole claim of any person against the owner or operator of any dairy plant . . . on account of milk, cream or any other dairy product . . . sold or delivered to such owner, operator . . . shall be entitled to the same preference in . . . insolvency proceedings as is given by any law of this state . . . to claims for labor.' . . ."  Sec. 100.06 (8), Stats. 1945.

Distribution out of the debtor's estate goes first for preserving the estate, subsequent to the commencement of the pro-

ceedings, then for costs of administration, and then to labor for wages, not exceeding $600 for each labor claim and earned within three months before the commencement of the proceedings, together with the amount due producers of dairy products. The trial court was of the opinion that the words, "whole claim," as used in the statute were modified into a limitation by the words, "entitled to the same preference in . . . insolvency proceedings as is given by any law of this state . . . to claims for labor." In his decision he limited amounts of preference to $600 and deliveries made within three months.

Before considering the meaning and purpose of sec. 100.06 (8), Stats., as it may affect claims for dairy products, and because the deliveries were made within three months and each claim is for less than $600, it should be noted that by virtue of the merits of the claims presented by the Pure Milk Association the limitation phase of the question does not necessarily arise. This is because its agreement with its members was in the nature of a contract of agency. Although respondent recognizes this and the fact that preference goes with the assignment of a preferred claim, the contention is made that the Pure Milk Association did not enter its claim as the assignee of the claims of the forty-one individual milk producers involved, but that instead the association filed its claim for a single aggregate sum, and in so doing placed the basis for the determination of preference in its own individual right and not in its rights as an assignee. Since under sec. 100.06 (8) the whole claim is within the preference it will make but little difference as to the ground upon which the claim is allowed. However, while the claim is filed for an aggregate sum, it was filed by the Pure Milk Association as the agent of its members, and the names, addresses, and accounts of those members with the times of delivery were submitted as part of the proof of claim, and their accuracy conceded. The Pure Milk Association in fact is the assignee of the forty-one milk producers. Each of such claims is entitled to preference.

The association did not waive any of its rights or become barred because for convenience it chose to set the individual claims forth in one claim.

Now, with reference to the interpretation of sec. 100.06 (8), Stats., the words of our statute are explicit. Their natural import and their literal sense clearly indicate an intention to place the claim of the producers of dairy products, in circumstances such as exist here, in the same bracket with and on the same level of preference as claims of labor. No other limitations are suggested or implied. The legislature has declared that the "whole" of such claims shall be given the same rank or priority of preference as is given labor claims. This advantage or this rank places labor and dairy producers' claims immediately after costs of administration. Sec. 128.17, Stats. 1945. They are fixed in this category and so stand in the course of distribution. Judicial decisions construing or applying similar statutes are few, but such as we have found sustain this interpretation. *Pyrites Co., Inc., v. Davison Chemical Co.* (D. C. 1933) 4 Fed. Supp. 294, and *In re Charles Nelson Co.* (D. C. 1939) 29 Fed. Supp. 56.

As to the claims of Roy L. Merrick, Earl Merrick, and Fay L. Merrick, it appears in the statement of facts that the trial court allowed them as general claims but subordinated them to the claims of other creditors. These appellants maintain that this determination is erroneous. It is true that there seems to be no serious controversy as to the amount of the claims or as to the existence of good faith. While these claims are not held to be fictitious or based on fraud of a wilful character, still the weight of authority supports the rule that claims of dominant stockholders who manage a business, and engage in an interchange among three business enterprises controlled by them for the purpose of keeping the business going, may be subordinated to the claims of other general creditors. *Boyum v. Johnson* (8th Cir. 1942), 127 Fed. (2d) 491. Facts considered in *Pepper v. Litton* (1939), 308 U. S.

295, 308, 311, 60 Sup. Ct. 238, 84 L. Ed. 281, differ decidedly from those now before us. Still that case is authority for the ruling made by the court below. In the *Pepper Case,* after stating that a director or controlling group of stockholders is a fiduciary whose powers are powers in trust, the court says:

"Thus, salary claims of officers, directors, and stockholders in the bankruptcy of 'one-man' or family corporations have been disallowed or subordinated where the courts have been satisfied that allowance of the claims would not be fair or equitable to other creditors. And that result may be reached . . . where the claim asserted is void or voidable because the vote of the interested director or stockholder helped bring it into being. . . . And so-called loans or advances by the dominant or controlling stockholder will be subordinated to claims of other creditors and thus treated in effect as capital contributions by the stockholder. . . .

". . . He who is in such a fiduciary position cannot serve himself first and his *cestuis* second. . . . He cannot use his power for his personal advantage and to the detriment of the stockholders and creditors no matter how absolute in terms that power may be and no matter how meticulous he is to satisfy technical requirements. For that power is at all times subject to the equitable limitation that it may not be exercised for the aggrandizement, preference, or advantage of the fiduciary to the exclusion or detriment of the *cestuis.*"

From the record it appears that the salaries of the three Merrick brothers were set up by formal action of the board of directors, of which the three brothers were themselves the only members. These salaries were apparently fixed at a higher amount than the business of the corporation would justify. Balances were left in their salary accounts in order to meet the corporate obligations. In view of facts dealt with by the trial court and in view of the law concerning fiduciaries and their position in bankruptcy proceedings, great consideration should be given to the findings of the trial judge. The practically private ownership of the insolvent concern and the constant interchange of transactions between the corpora-

tion and the private enterprises of the owners of all of the common stock in the insolvent corporation linked the fate of the private enterprises, although in different communities and therefore acting under different conditions, with that of the insolvent corporation. Even though we might have reached different conclusions we are not justified in setting aside the findings made below, and as to the subordinating of these claims to those of other general creditors the order is affirmed.

Inasmuch as Louella Parrish received her regular salary from one of the Merrick partnerships in Janesville, the fact that she was working at its request in Beloit for a short while, and as a part of the interchange referred to above, does not give validity to her claim for wages from the Merrick Dairy Company of Beloit. The trial court must be upheld in the disallowance of her claim.

*By the Court.*—Order affirmed except as it disallows a preference to the full claim of the Brook Hill Farm and of the Pure Milk Association. As to those claims the order is reversed, and cause remanded with directions to allow those claims in full.