**In re Barbara MILLER, Debtor.**

**Bankruptcy No. 87–01739F.**

United States Bankruptcy Court,
E.D. Pennsylvania.

May 5, 1988.

---

Roger V. Ashodian, Delaware County Legal Assistance Assn., Chester, Pa., for the debtor/objector, Barbara Miller.

Edward S.G. Dennis, Jr., U.S. Atty., Philadelphia, Pa., and Valentina G. Viletto, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for I.R.S.

Edward Sparkman, Philadelphia, Pa., trustee.

## MEMORANDUM OPINION

BRUCE I. FOX, Bankruptcy Judge:

The debtor has filed an objection to the proof of claim submitted by the Internal Revenue Service, (IRS) in the amount of $1,953.57. Although the proof states that this claim is for taxes due in 1985, the parties agree that the time period in question is 1984. IRS contends that the debtor was a self-employed individual in 1984 and thus obligated to pay self-employment tax. The debtor argues that in 1984 she was an employee of TRS Advertising Company and so had no such tax liability. After reviewing the submissions of the parties, and the testimony and documents presented at trial, I make the following factual findings.

### I.

1. During 1984 the debtor was working as a telephone solicitor.

2. She was hired by TRS Advertising Company to telephone individuals and convince them to purchase tickets to fund raising events designed to benefit civic organizations.

3. The debtor was paid on a commission basis depending upon the amount of her sales. She received no vacation or sick pay, and no fringe benefits of any kind. She was permitted to take up to one week off, but without pay.

4. TRS established sales quotas for the debtor (and others like her). If she failed to meet those quotas, her services could be terminated; if she exceeded the quotas, she would receive a bonus.

5. Payments were made to the debtor every week. Occasionally, she received bonuses because of her sales volume.

6. The debtor had the option of either working at home or working at the offices of TRS. The debtor chose to work at home.

7. The debtor was provided with forms on which to record her sales, and extremely lengthy lists of names of prospective purchasers. These lists were grouped by geographical location. No evidence was offered as to the source of the lists. They may have been purchased by TRS or obtained for free from a source such as a telephone directory. The debtor was required to call those whose names were on these lists, but she was free to choose the sequence, the number, and the time of the calls. She had no duty to report the results of each call or to inform TRS of whom she called unless the individual agreed to purchase tickets.

8. The debtor received no training from TRS for her duties; training was available but not mandatory. The debtor was an experienced telephone solicitor, having been a salaried telephone solicitor for another firm prior to her involvement with TRS.

9. The debtor was free to make her telephone calls when and how she chose; however, TRS informed her that calling individuals between the hours of 6:00 P.M. and 10:00 P.M. was the most profitable, and that, in fact, is when the debtor did call prospective customers.

10. TRS provided the debtor with "sales pitches" designed to convince individuals to buy what the debtor was selling. There was no requirement that the debtor use these pitches, nor was there any monitoring of her calls.

11. The debtor was obligated to record every sale on a form prepared by TRS and to mail those forms to TRS on a regular basis, which she stated was nightly.

12. TRS never reimbursed the debtor for expenses such as telephone and postage charges.

13. The debtor was free to quit at any time without penalty. She never had any written agreement with TRS.

14. When TRS paid the debtor, which was weekly, her checks were not accompanied by pay stubs, nor was there any indication that income taxes or social security taxes were being withheld. Nonetheless, the debtor testified that she believed such taxes were withheld. I conclude that this belief was unwarranted.

15. At the conclusion of 1984, TRS sent a 1099 form to the debtor which stated that she had earned $11,563.46 in "nonemployee compensation."

16. Upon receipt of the 1099 form, the debtor telephoned the IRS taxpayer assistance division and sought information about filing her 1984 taxes. She was advised to file a Schedule C ("Profit or Loss From Business or Profession"), to list her business as telephone solicitor, and to file a schedule SE (for self-employment tax).

17. The debtor had been recently widowed and stated that her tax filings for calendar year 1984 were the first that she, rather than her husband, had prepared.

18. The debtor filed her tax return late, in August 1985, without requesting or receiving any extensions. She filed a Schedule C, listed her business as telephone solicitor, "Subcontractor of TRS Advertising", reported her commissions under gross receipts, (reported other income from Victory Service and Vending Corp.—$2,048.00) and took the following business expenses: supplies—$200.00; utilities and telephone—$1,500.00; and home office—$600.00.

19. She did not file a Schedule SE because she consulted with her relatives and concluded that she had no obligation to pay any self-employment taxes.

20. There is no evidence to conclude that TRS ever withheld taxes from the debtor's weekly commission payments. The debor's statements to the contrary are undercut by the absence of any documentary evidence, by the 1099 form and by the debtor's own tax return. If she thought that FICA taxes were being withheld she would have also concluded that income taxes were being withheld. Her tax return contains the express statement that no income taxes were withheld.

21. On July 15, 1986, IRS sent a notice of deficiency in the amount of $1,261.00 due to the debtor's failure to pay self-employment taxes.

22. On April 9, 1987, the debtor filed a voluntary petition under chapter 13.

23. On July 2, 1985, IRS filed a priority proof of claim seeking $1,261.00 for unpaid self-employment taxes, $352.55 in interest and $339.99 in penalties.

These factual findings yield the following legal conclusions:

1. The debtor was not in the control of nor was she a common-law employee of TRS within the meaning of 26 U.S.C. § 3121(d).

2. The debtor was liable for self-employment taxes.

3. The debtor is liable for prepetition interest and penalties.

II.

The narrow issue presented by the debtor's objection—whether she is liable for self-employment taxes—is actually somewhat less significant than the debtor acknowledges. First, the only objection made is directed to her liability for self-employment taxes on income from TRS Advertising; no challenge is made to her liability for self-employment taxes connected with the income from Victory Service and Vending Corp. Second, there is no support for the debtor's conclusion that she has already paid her "employee" component of FICA taxes. (*See* Finding # 20). Therefore, even if the debtor were to prevail, the result would be to reduce the IRS proof by a relatively small fraction, and not eliminate it.

■ The narrow dispute regarding the debtor's employment status is derived from the Self–Employment Contributions Act (SECA), 26 U.S.C. §§ 1401 *et seq.* Employees have deducted from their wages social security taxes pursuant to the Federal Insurance Contributions Act (FICA). These contributions are matched by employers. Since self-employed individuals neither have wages withheld, nor do they have employer contributions, they are assessed a

self-employment tax on their income which Congress established at a rate higher than an employee's FICA contribution but less than the combined employee-employer rate. In 1984, which is the relevant year for this dispute, employee FICA taxes were assessed at the rate of 6.7% on the first $37,800.00 of wages. By contrast, SECA taxes were assessed at the rate of 11.3% on the first $37,800.00 of earnings. Whether the debtor is liable for this higher rate depends upon whether she was "self-employed."

SECA does not define "self-employment". Instead, the Internal Revenue Code, 26 U.S.C. § 3121(d) defines "employee" as, in relevant part, "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee....". This definition was adopted in 1948 as an adverse congressional response to two Supreme Court decisions which had introduced the "economic reality test" as a component of the definition of employee. *See generally United States v. W.M. Webb, Inc.,* 397 U.S. 179, 90 S.Ct. 850, 25 L.Ed.2d 207 (1970).

The common law definition of employee has focused in large part upon control. Treasury Regulation § 31.3121(d)–1(c) (26 C.F.R. § 31.3121(d)–1(c)) states:

*Common law employees.*

Every individual is an employee if under the usual common law rules the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

Generally, such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. Individuals such as physicians, lawyers, dentists, veterinarians, construction contractors, public stenographers, and auctioneers, engaged in the pursuit of an independent trade, business, or profession, in which they offer their services to the public, are independent contractors and not employees.

Whether the relationship of employer and employee exists under the usual common law rules will in doubtful cases be determined upon an examination of the particular facts of each case.

Although control is the usual common law standard for determining an employee relationship, *see Air Terminal Cab, Inc. v. United States,* 478 F.2d 575, 579 (8th Cir. 1973), control is not the sole factor. As the Third Circuit Court of Appeals in *American Consulting Corp. v. United States,* 454 F.2d 473, 477 (3d Cir.1971) stated:

In the application of the common law principles the "right to control" test remains an important index of the relationship, but no one factor is controlling.[1]

Phrased another way:

Whether an employer-employee relationship exists or not "is to be ascertained by

---

1. A separate line of decisions has attempted to define the term "employee" in the context of the Fair Labor Standards Act, 29 U.S.C. §§ 201–219.

The Third Circuit has accepted the test offered in *Donovan v. Sureway Cleaners,* 656 F.2d 1368

an over-all view of the entire situation, not by any rule of thumb, or by the presence or absence of a single factor. The result in each case must be governed by the special facts and circumstances of the case itself."

*Avis Rent A Car System, Inc. v. United States*, 364 F.Supp. 605 (E.D.N.Y.1973) *quoting Cape Shore Fish Co. v. United States*, 330 F.2d 961 (Ct.Cl. 1964). Thus, I must undertake a fact intensive review. *Air Terminal Cab, Inc. v. United States*, 478 F.2d at 578.[2]

First, I note that TRS has consistently acted as though the debtor was self-employed. "The beliefs and intentions of the parties, while not determinative of the issue, are nonetheless relevant." *Avis Rent A Car System, Inc. v United States*, 364 F.Supp. at 612. *Accord American Consulting Corp. v. United States*. TRS provided no benefits, tendered no wage stubs, deducted no taxes, and sent the debtor a 1099 form, not a W–2 statement. The debtor counters that in her view, she was always an employee of TRS. However, this testimony is contradicted by statements made on her tax return and her recognition that TRS withheld no federal income taxes. Since the debtor was a salaried employee previously, she must have been aware of the difference in the manner in which TRS paid her.

Second, the obvious indicia of employment status are absent here. There were no fixed hours of employment, no holiday benefits, no sick leave, and no vacation time. *See Air Terminal Cab, Inc. v. United States*, 478 F.2d at 578. *Lieb v. United States*, 438 F.Supp. 1015, 1019 (E.D.Okla. 1977).

Third, the debtor was free to work at home. While the IRS takes the position that telephone solicitors working at home are normally self-employed, (IRS Memorandum, at 8), *see Lieb v. United States*, 438 F.Supp. at 1016, I need not accept, *per se*, such a general conclusion. However, I note that the ability to control an individual working at home is significantly reduced. The debtor argues in her post-trial memorandum that TRS was entitled to mandate that the debtor work on its premises. Nevertheless, the debtor did not so testify. She simply stated that TRS gave her the option of whether to work at home.

■ Fourth, I view as significant that the debtor paid her own expenses of telephone solicitation. Theoretically, if her sales were very low, her expenses might exceed her commission payments. The existence of a risk of loss is significant in deciding whether an individual is self-employed. *See Air Terminal Cab, Inc. v. United States*, 478 F.2d at 580–81.

This is not to overlook aspects of this working environment which do evidence TRS's control over the debtor's method and mode of operation. She was obligated to report sales nightly on company provided forms. She both had the right to quit and

(9th Cir.1981) for determining whether a worker is an employee:

> 1) the degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; 6) whether the service rendered is an integral part of the alleged employer's business.

*Donovan v. Dialamerica Marketing Inc.*, 757 F.2d 1376, 1382 (3d Cir.) *cert. denied*, 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985). This six part test cannot be borrowed *in toto* for SECA purposes. "Congress and the courts have both recognized that, of all the acts of social legislation, the [FLSA] has the broadest definition of 'employee'". *Dialamerica*, 757 F.2d at 1382. *See also Equal Employment Opportunity Commission v. Zippo Manufacturing Co.*, 713 F.2d 32 (3d Cir.1983) (definition of employee for age discrimination cases is a hybrid).

**2.** The IRS has published revenue rulings designed to assist in the analysis. *Rev. Ruling* 74–333 was in effect in 1984 and concerns itself explicitly with telephone solicitors. It offers two hypothetical fact patterns to illustrate different ways to analyze the issue of control. I disagree with the IRS that the debtor's work situation falls neatly within example 2. *Rev. Ruling* 87–41 has replaced Rev. Ruling 74–333 and is more general in scope. It lists twenty "factors" which are to be considered when resolving issues under § 3121(d). I accept these factors as illustrative and not limiting.

the risk of being discharged. *See American Consulting Corp. v. United States.* She claims that she was limited to working for TRS exclusively. *See Ringling Bros.— Barnum and Bailey Combined Shows v. Higgins,* 189 F.2d 865 (2d Cir.1951). It is undisputed that the debtor was not free to call customers she chose. She was limited to calling those whose name appeared on a list provided by TRS. And she was given a standard speech which she could deliver to prospective customers.

Despite these restrictions, TRS did not exercise the degree of control generally needed to demonstrate an employer-employee relationship. The debtor was free to call anyone on her list, in any sequence, at any time. Her calls were never monitored or supervised in any way. Whether she delivered the TRS speech was at her discretion. No training was mandatory. In sum, the preponderance of the evidence leads to the conclusion that the debtor was self-employed. *See American Consulting Corp., Lieb; Avis Rent A Car System, Inc.*[3]

### III.

■ IRS also seeks interest and penalties from April 15, 1985 until April 19, 1987 (the date this chapter 13 case was commenced) pursuant to 26 U.S.C. §§ 6622 and 6651. The debtor contests these charges arguing that her failure to file properly was due to her husband's illness and her confusion regarding her tax liabilities. My sympathies towards the debtor notwithstanding, I must conclude that the interest and penalty charges were properly assessed. *See generally In re Pool & Varga, Inc.,* 60 B.R. 722 (Bankr.E.D.Mich. 1986).

First, the debtor's asserted confusion should have been alleviated by the information provided by the IRS itself. The debtor called the IRS and was properly instructed. She chose to listen to others, (her relatives), rather than to the IRS or professional advisors. Because the debtor ignored correct IRS advice, it is difficult to credit her testimony that she was genuinely confused.

Second, she missed the April 15, 1985 tax deadline by four months. Whatever inexperience one may have about tax returns should not apply to knowledge of this deadline, which has received considerable notoriety. The inability to pay a tax due to the lack of funds does not excuse the obligation to file. *In re Pool & Varga, Inc.* Indeed, even the illness of the taxpayer (and so illness of a spouse as well) does not excuse the obligation to file. *See Wolfe v. United States,* 612 F.Supp. 605 (D.Mont. 1985) *aff'd.* 798 F.2d 1241 (9th Cir.1986) *amended* 806 F.2d 1410 *cert. denied —* U.S. ——, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987).

Finally, the debtor has never addressed the income she received from Victory Service and Vending Corp. Whatever doubt she may have had about her status with TRS could not have applied with respect to this other income. Had she concerned herself with the proper tax approach to this income, she might have avoided the present dispute.

For the reasons stated above, the debtor does not meet the "reasonable cause" standard established by 26 C.F.R. § 301.6651–1(c). Therefore the penalty components cannot be waived.

An appropriate order shall be entered.

### ORDER

AND NOW, this 5 day of May, 1988, upon consideration,

---

3. IRS contends that its assessment of tax liability is presumptively correct and that this presumption shifts the burden of proof and production to the debtor. *See Psaty v. United States,* 442 F.2d 1154 (3d Cir.1971). But *see Lieb* (applied preponderance standard without granting presumption). Generally though, in bankruptcy litigation the objector to a proof of claim has only the burden of production. *In re Koch,* 83 B.R. 898, 903 (Bankr.E.D.Pa.1988); *In re Lewis,* 80 B.R. 39 (Bankr.E.D.Pa.1987); 3 *Collier on Bankruptcy* ¶ 502.01, at 502–16 (15th ed. 1987). Inasmuch as I conclude that the preponderance of the evidence favors the creditor's position in the matter at bench, I need not decide whether the IRS had a lesser burden.

it is hereby ORDERED that the debtor's objection to the Internal Revenue Service proof of claim is DENIED.