**In re KASSON INC., U.S.A., Debtor.**

**Bankruptcy No. 89–02083.**

United States Bankruptcy Court,
E.D. Wisconsin.

Dec. 28, 1989.

Peter C. Blain, Milwaukee, Wis., for debtor.

Reid W. Klopp, Madison, Wis., for State of Wisconsin Dept. of Agriculture, Trade & Consumer Protection.

Jerome D. Krings, Milwaukee, Wis., for NFO Members' Dairy Custodial Account and Natl. Farmers Organization.

Raymond S. Huber, Clintonville, Wis., for various milk suppliers.

John A. St. Peter, Fond du Lac, Wis., for Associated Milk Producers, Inc.

Benjamin Waisbren, Milwaukee, Wis., for unsecured creditors' committee.

John Robert Byrnes, Milwaukee, Wis., Asst. U.S. Trustee.

Paul S. Medved, Milwaukee, Wis., for First Wisconsin Nat. Bank of Sheboygan.

## DECISION

JAMES E. SHAPIRO, Bankruptcy Judge.

Objections by Kasson Inc., U.S.A. ("debtor") to the priority claims of 281 milk producers (commonly referred to as "patron farmers" or "milk suppliers") have been presented to this court. The issue is as follows:

Do the claims due to the milk suppliers, accruing within 90 days before the date of filing of debtor's chapter 11 petition, qualify as "wages" within the meaning of 11 U.S.C. § 507(a)(3)?

The debtor is a producer of cheese and is located in Brillion, Wisconsin. The milk suppliers sold their entire milk supply to the debtor. On May 2, 1989, the debtor filed for reorganization under chapter 11, and at that time, the milk suppliers had claims totalling approximately $419,000 for which they are seeking priority treatment. All of these claims accrued within the 90–

day period prior to the filing of the debtor's petition.[1]

A determination of this issue requires an analysis of 11 U.S.C. § 507(a)(3)[2] and Wis. Stat. § 100.06(7)[3]. Upon a review of these statutes, a stipulated set of facts and briefs, this court concludes that the milk suppliers' claims are not wages within the meaning of § 507(a)(3), but are pre-petition unsecured claims. No employer-employee relationship existed between the milk suppliers and the debtor, and Wis.Stat. § 100.06(7) does not mandate a contrary conclusion. The usual deductions which an employer withholds from payments to its employees for federal and state income taxes and social security were not withheld by the debtor from the payments to the milk suppliers. The only deductions which the debtor made from these payments were to cover the milk suppliers' contributions to costs of hauling milk and for health and life insurance premiums. The insurance premiums were fully paid by the milk suppliers under a group insurance plan for dairy farmers and deductions were made by the debtor solely as an accommodation. This procedure contrasts with the debtor's treatment of its acknowledged employees (union and non-union clerical, management and other staff personnel) where deductions for federal and state income taxes and social security were taken. Although the debtor labelled the payments to the milk suppliers as originating from a so-called "producer payroll" account, this is a term commonly used in the dairy industry. It is only one factor and not decisive upon the ultimate issue of whether payments to milk suppliers are wages. Many other overriding considerations exist in this case which lead this court to conclude that the milk suppliers are independent contractors and not employees. They include the following:

1. The debtor never treated the payments made to the milk suppliers as wages on its income tax returns and did not issue W–2 or 1099 forms to them.

2. There was never any requirement that the milk suppliers and debtor provide notice to each other of termination of their relationship.

3. No workers' compensation or unemployment compensation claims were ever filed against the debtor by any milk suppliers.

4. The debtor never furnished any tools or equipment to the milk suppliers.

5. The debtor never provided any profit sharing, pension or other fringe benefits to the milk suppliers. The debtor did maintain a defined benefit pension plan for its union employees and a separate pension plan and paid for most of the group health and life insurance premiums of its clerical and management employees.

With respect to defining wages, all parties have taken the position that this is a matter of state law. While it is arguable if state law is controlling on this issue, reference to state law is certainly appropriate. All of the Wisconsin decisions dealing with the meaning of "wages" support the debt-

---

1. Because 11 U.S.C. § 507(a)(3) is limited to "individuals," the parties have stipulated that the eight milk suppliers which are corporations are in no event entitled to priority treatment under § 507(a)(3). *See Matter of Dahlman Truck Lines, Inc.,* 59 B.R. 218 (Bankr.W.D.Wis. 1986).

2. 11 U.S.C. § 507. Priorities.

   (a) The following expenses and claims have priority in the following order:

   . . . . .

   (3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay.

3. Wis.Stat. § 100.06. Dairy licenses; financial condition.

   . . . . .

   (7) The whole claim of any person against any licensee under s. 97.20 on account of milk, cream or dairy products sold or delivered to such licensee and any judgment therefor shall be entitled to the same preference in any insolvency or other creditor's proceedings as is given by any of this state to claims for labor. One claim may be filed for any number of producers and when so filed the preference shall be allowed on the amount due each producer. Such preference shall also be given in bankruptcy proceedings to the extent permitted by the federal law. This section shall not affect or impair any other lien, security or priority for said claim or judgment.

or's position. *Knaak v. Schmidt*, 256 Wis. 463, 41 N.W.2d 625 (1950), asserts at p. 465, 41 N.W.2d 625:

Given its ordinary meaning the word "wages" refers to the compensation given or to be paid by an employer to an employee.

*Matter of Dahlman Truck Lines, Inc.*, 59 B.R. 218, 220, states that, under Wisconsin law, the degree and quality of control which a party has over another party determines whether an employer-employee relationship exists, citing *Thurn v. LaCrosse Liquor Co.*, 258 Wis. 448, 46 N.W.2d 212 (1951); *Mueller v. Luther*, 31 Wis.2d 220, 142 N.W.2d 848 (1966); *Bond v. Harrel*, 13 Wis.2d 369, 108 N.W.2d 552 (1961). Under the undisputed facts, the degree of control necessary for an employer-employee relationship between the debtor and the milk suppliers was lacking. The fact that the debtor has maintained a field service staff available to the milk suppliers and (as required under Sec.Ag. 30.11 Wis.Admin. Code) field personnel available to assist in maintaining and improving milk quality is not decisive. These factors fall far short of providing the degree of control necessary to establish an employer-employee relationship. A mere reservation of the right to inspect and generally supervise does not destroy the character of an independent contractor. *Weber v. City of Hurley*, 13 Wis.2d 560, 568, 109 N.W.2d 65 (1961).

Moreover, upon a careful reading of Wis. Stats. § 100.06(7), this statute itself recognizes the existence of a difference between wages and the claims of milk suppliers. Wis.Stats. § 100.06(7) states that the payments to be made to milk suppliers are "entitled to the *same preference* as is given to claims for labor" (emphasis added) for purposes of state insolvency and other creditors' proceedings. The wording "same preference" in this statute does not mean that "payments to milk suppliers" and "wages" are one and the same. While there is little room to argue that "wages" and "claims for labor" are interchangeable terms, the same cannot be said in comparing "claims for labor" with milk suppliers' claims. In the same vein, it also cannot be said that "wages" and milk suppliers'

claims have the same meaning for purposes of § 507(a)(3) of the Bankruptcy Code.

While the meaning of wages may be decided by reference to state law, priority of payment is exclusively a matter of federal law, and state law cannot in any manner interfere with the priorities fixed under the Bankruptcy Code. *In re Redford Roofing Co., Inc.*, 54 B.R. 254 (Bankr.N.D.Ill.1985). 4 *Collier on Bankruptcy* (15th Ed.1989) § 507.02 states that "... priorities are fixed by Congress, and courts are not free to fashion their own rules of super-priorities or sub-priorities within any given priority class." The monies due to the milk suppliers may be "akin to wages" or "similar to wages," but they are not wages. The specific language in § 507(a)(3) is not "wages or claims similar to or akin to wages." It simply states "wages." If this court permitted the milk suppliers' claims to be raised to the level of § 507(a)(3) priority claims, it would be fashioning its own rules of priority in contravention of the federal Bankruptcy Code. Wis.Stats. recites that "such preference shall be given in bankruptcy proceedings *to the extent permitted by the federal law*" (emphasis added). This is a clear recognition by the Wisconsin legislature of the Supremacy Clause of the United States Constitution.

There is no question that the milk suppliers have suffered a great loss. This decision should in no manner be interpreted as meaning that the court is insensitive to the situation in which these milk suppliers find themselves. However, this is a matter of policy which should be addressed to Congress, as was done when § 507(a)(5) of the Bankruptcy Code was enacted as part of the 1984 Bankruptcy Amendments. § 507(a)(5) became law in response to the grain storage facility bankruptcies and was intended to help those farm producers engaged in the production and raising of grain and who found themselves in the category of general unsecured creditors. It was enacted to give this particular group of farmers a separate priority classification. Unfortunately, there is no separate priority statute for the milk suppliers.

The milk suppliers have asked this court to interpret § 507(a)(3) liberally and, by so doing, give them priority treatment. That would be more than providing a liberal interpretation. It would be engaging in judicial legislation. The bankruptcy court in *In re Joiner*, 52 B.R. 41, 43 (Bankr.W.D. N.Y.1985), stated:

> The fact that a statute is to be liberally construed does not authorize redrafting the unambiguous language of a statute.

While a bankruptcy court is a court of equity, it can only apply general principles of equity in a manner consistent with the provisions of the Code. *Johnson v. First Nat. Bank of Montevideo, Minn.*, 719 F.2d 270 (8th Cir.1983), cert. denied, 465 U.S. 1012, 104 S.Ct. 1015, 79 L.Ed.2d 245 (1984). The Seventh Circuit has dispatched a clear message in recent decisions that courts must not engage in judicial legislation. Judge Cudahy in *In re Powelson*, 878 F.2d 976 (7th Cir.1989), (quoting from *Matter of Chicago, Milwaukee, St. Paul & Pacific Railroad*, 791 F.2d 524 [7th Cir.1986]) asserted that a court of equity does not have "free floating discretion to redistribute rights in accordance with his personal views of justice and fairness" and further said (quoting from *Official Committee of Equity Security Holders v. Mabey*, 832 F.2d 299 [4th Cir.1987], cert. denied, 485 U.S. 962, 108 S.Ct. 1228, 99 L.Ed.2d 428 [1988]) that the court's equitable powers are not a "license to disregard the clear language and meaning of the bankruptcy statute." Other decisions teach the same lesson. *In re Thompson*, 867 F.2d 416 (7th Cir.1989) (grafting dollar limitations of federal exemptions to Wisconsin statutes would be engaging in "judicial rewriting of statutes"); *In re Bundles*, 856 F.2d 815, 823 (7th Cir.1988) ("Any change deemed desirable on policy grounds should be addressed to Congress rather than to this court. Our duty is simply to interpret the language of the statute."); and *Bonded Financial Services, Inc. v. European American Bank*, 838 F.2d 890, 894 (7th Cir.1988) ("We have serious doubts ... about the propriety of judges declining to enforce statutes that produce inequitable results. Bankruptcy statutes are not special cases."). Finally, the United States Supreme Court has also spoken on this point. Justice Scalia in *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988), declared:

> ... whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code.

Also, in *U.S. v. Ron Pair Enterprises, Inc.*, 489 U.S. ——, 109 S.Ct. 1026, 1030–1033, 103 L.Ed.2d 290 (1989), Justice Blackmun proclaimed:

> Where, as here, the statute's language is plain, the sole function of the courts is to enforce it according to its terms.

The cases cited by the milk suppliers' are distinguishable. *In re Merrick Dairy Co.*, 249 Wis. 295, 24 N.W.2d 679 (1946), involved a voluntary assignment for the benefit of creditors under Chapter 128, Wis. Stats. It was not a bankruptcy case. *In re Farmers Markets, Inc.*, 792 F.2d 1400 (9th Cir.1986), and *In re Anchorage International Inn, Inc.*, 718 F.2d 1446 (9th Cir. 1983), also differ significantly from the case at bar. They dealt with interests created for creditors under state statutes, which become operative upon the transfer of a liquor license independent of any bankruptcy. These statutes involve a single asset and do not displace priority provisions, in contrast to Wis.Stat. § 100.06(7) which does impact upon the Bankruptcy Code's priority scheme of distribution and only becomes operative upon bankruptcy, insolvency or other creditors' proceedings. *In re Chateaugay Corp.*, 80 B.R. 279 (Bankr.S.D.N.Y.1987), does not present the same issue confronting this court. *Chateaugay* was concerned with proposed interim payments only and stands for the proposition that all creditors within a priority class must be treated alike but need not be paid at the same time.

In summary, the milk suppliers' claims do not fall within § 507(a)(3) of the Bankruptcy Code. To elevate these claims to that level based upon Wis.Stats. § 100.06(7), would do violence to the priority distribution established under 11 U.S.C. § 507.

The objections of the debtor to the priority claims classification of the milk suppliers are SUSTAINED, and these claims are relegated to the class of general pre-petition unsecured claims.