### In re SAINT JOSEPH'S HOSPITAL, Debtor.

**Bankruptcy No. 88–14005S.**

United States Bankruptcy Court, E.D. Pennsylvania.

April 10, 1991.

**38**

Ellen M. McDowell, Drinker Biddle & Reath, Philadelphia, Pa., for debtor.

James J. O'Connell, Asst. U.S. Trustee, Philadelphia, Pa.

Kevin Brislin, Philadelphia, Pa., for Dr. Carl Ellis.

Pace Reich, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for Unsecured Creditors' Committee.

## OPINION

DAVID A. SCHOLL, Bankruptcy Judge.

### A.  INTRODUCTION

The instant contested matter presents the issue of whether an arrangement by which a dentist operated an oral surgery clinic for the Debtor-hospital rendered the unpaid pre-petition sums due to the dentist under the parties' "employment agreement" to be "wages, salaries, or commissions" entitled to a priority under 11 U.S.C. § 507(a)(3).  We conclude that the Debtor's lack of control over, *inter alia*, the equipment utilized, personnel hired, charges made, or hours worked by the Dentist at the clinic contravene the written characterization of the parties' relationship as that of employer and employee, and render the Dentist ineligible for a priority claim.

### B.  PROCEDURAL AND FACTUAL HISTORY

ST. JOSEPH'S HOSPITAL ("the Debtor") filed a voluntary Chapter 11 bankruptcy case on November 15, 1988.  Its Plan of Reorganization was confirmed on July 26, 1990.

On February 9, 1989, Dr. Carl Ellis ("the Dentist") filed two proofs of claim.  The first, No. 100, involved a $900 claim arising out of a Youth Study Center contract and has been voluntarily withdrawn.  The second, No. 101, was in the amount of $3,400 and arose out of the Dentist's operation of an oral surgery clinic at 2000 Spring Garden Street, Philadelphia, Pennsylvania, a site about five blocks from the Debtor's main hospital location at 16th Street and Girard Avenue in Philadelphia.  The claim concerned alleged wages, salary, or commissions of $1,000 weekly running from October 20, 1988, to December 1, 1988, and claimed a right to a priority pursuant to 11 U.S.C. § 507(a)(3), to the $2,000 maximum extent permitted by that law.

On January 22, 1991, the Debtor filed Objections to both of the Dentist's claims. After one continuance, until April 3, 1991, the parties' counsel appeared and presented the matter to us on a Stipulation of Facts which recites in pertinent part as follows:

> 5.  All expenses of [the] dentistry practice relating to the Building, including heat and electric, were paid by the Debtor during the relevant time period.

6. All equipment and machinery used ... in [the] dentistry practice during the relevant time period were supplied by and paid for by [the Dentist].

7. Any personnel engaged to assist [the Dentist] during the relevant time period were hired by [the Dentist] at his own expense.

8. The Debtor provided malpractice and health insurance for [the Dentist] during the relevant time period.

9. The sums paid by the Debtor to [the Dentist] during the relevant time period were reported to the federal government on a form 1099.

10. Sums paid by the Debtor to [the Dentist] were at no time reported to the federal government as wages on a form W–2.

11. At no time did the Debtor withhold sums from payments made to [the Dentist] for federal, state, or city income or wage taxes, or for Social Security.

12. [The Dentist] had no direct supervisor in his practice during the relevant time period.

13. At no time did the Debtor dictate the hours of [the Dentist's] practice or the manner in which [he] conducted his work.

14. [The Dentist's] claim against the Debtor and/or its estate is limited to the amount of $2,000.00.

One exhibit to the Stipulation is a letter of January 15, 1985, from the Debtor's administrator to the Dentist which recites "the general guide line" of the parties' relationship. It provides, *inter alia*, that the "salary" of the Dentist is established as "60% of collections with an initial draw of $52,000;" that the Dentist is to be supplied with "the same benefit package offered to other hospital employees;" and that the Dentist is obliged to refer all of his patients needing hospitalization to the Debtor's facility. An attachment to the letter contains a hypothetical calculation of the Dentist's compensation which is designated as an "[e]xample of Item # 3 of employment agreement." Other exhibits to the Stipulation include letters of January 9, 1989, and January 20, 1989, from the Debtor to the Dentist in which the Debtor regretfully expresses its desire to terminate the Dentist's "employment."

## C. LEGAL DISCUSSION

■ The Dentist's right to priority treatment is determined by 11 U.S.C. § 507(a)(3), which provides as follows:

§ 507. Priorities

(a) The following expenses and claims have priority in the following order:

.    .    .    .    .

(3) Third, allowed unsecured claims for wages, salaries, or commissions including vacation, severance, and sick leave pay—

(A) earned by an individual within 90 days before the date of the filing of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

The parties agreed that the sole issue is whether the Dentist's claim fits within the category of "wages, salaries, or commissions" set forth in § 507(a)(3). Counsel each cited one case allegedly in support of their respective positions: the Debtor, *In re Kasson, Inc., U.S.A.,* 109 B.R. 352 (Bankr.E.D.Wis.1989); and the Dentist, *In re Moriarty,* 27 B.R. 73 (Bankr.M.D.Fla. 1983).

*Moriarty* does not support the Dentist's position. In that case, the court determined that the debtor, a real estate agent, was *not* entitled to exempt certain commissions as "wages" under Florida state law because he was "an independent contractor." Not only is the result regarding the party-in-interest's employment status contrary to that sought by the Dentist in the instant dispute, but the issue of entitlement to the Florida exemption is distinct from the issue of whether the Dentist's claim is entitled to priority under the Bankruptcy Code.

*Kasson,* holding that payments due to milk suppliers from the debtor-cheese producer were not within § 507(a)(3), is more to the point. However, *Kasson* is a much

simpler case than the instant case. The *Kasson* court rather easily found that "[n]o employer-employee relationship existed" between the debtor and the suppliers. 109 B.R. at 353. The debtor never supplied 1099 *nor* W–2 forms to the milk suppliers, nor did it provide any fringe benefits like insurance or a benefit package to them. *Id.* Although the suppliers were paid from a "'producer payroll' account," *id.*, the court found that "[u]nder the undisputed facts, the degree of control necessary for an employer-employee relationship between the debtor and the milk suppliers was lacking." *Id.* at 354.

We located only a few other relevant cases decided under the Bankruptcy Code. In *In re American Shelter Systems, Inc.*, 40 B.R. 793, 794, 795 (Bankr.W.D.La.1984), the court ultimately adopted the Trustee's contention, contrary to the position of the claimant, that "the statute [11 U.S.C. § 507(a)(3) ] was intended to cover employees within a master-servant relationship." *Id.* at 794. Thus, it concluded that the claimant, an "outside salesman" of mobile homes, was not entitled to a § 507(a)(3) priority for unpaid commissions. In *In re Seventh Avenue South, Inc.*, 10 B.R. 289 (Bankr.W.D.Va.1981), the court held that a "chief representative of the Debtor in a subsidiary venture," *id.*, at 289, was entitled to a priority claim under § 507(a)(3) despite the fact that his commissions were not determined until a subsequent, post-petition adjustment was made. The court, *id.* at 292, quoted, however, from 3A COLLIER ON BANKRUPTCY, § 64.202 at 2120 (14th ed. 1975), which states as follows:

> "There is nothing ambiguous about the use of the word 'wages' in this connection. It means the agreed compensation for services rendered by the workmen, clerks, or servants of the bankrupt— those who have served him in a subordinate or menial capacity and who are supposed to be dependent upon their earnings for their present support. . . ."

This court previously held, in *In re Comtec Industries, Inc.*, 91 B.R. 344, 346 (Bankr.E.D.Pa.1988), that

the restriction of the scope of the [Bankruptcy] Act's priority wage claims to parties that perform labor in a subordinate capacity as opposed to managers and directors of a corporate debtor remains viable. *Compare* [*In re* ] *Konidaris*, [87 B.R. 846 (Bankr.E.D.Pa.1988) ] (wage claimant was obviously a subordinate laborer).

The issue in the present controversy is, however, not, as it was in *Comtec*, whether the Dentist's position with the Debtor was elevated to the status of an officer or manager, causing him not to be entitled to a priority because of an inability to satisfy the policy of being unable to investigate the Debtor's creditworthiness prior to bankruptcy. *See id.* at 345–46. Rather, is it whether the Debtor exercised sufficient control over his operations to render him an ."employee" who was a recipient of "wages, salary, or commissions." Although the question is rather close, we are constrained to conclude that the Debtor does not meet this qualification.

Because of lack of guidance from cases under the Bankruptcy Code, we searched for analogous fact patterns in cases interpreting other laws.

The most closely analogous Bankruptcy Act cases which we located were *In re Estey*, 6 F.Supp. 570 (S.D.N.Y.1934), and *In re All Star Feature Corp.*, 231 F. 251 (S.D.N.Y.1916), in which a business school teacher and an actress, respectively, were found not entitled to priorities for unpaid salaries because they were not "workmen" or "servants" of the respective debtors. *See also In re Footville Condensed Milk Co.*, 237 F. 136 (W.D.Wis.1916) (milk handlers who were found to be "independent contractors" were held not entitled to priority). *But see In re Caldwell*, 164 F. 515, 517 (E.D.Ark.1908) (musicians hired to play in an orchestra on the debtor's roof garden were held entitled to wage priority because such a party "is subject to his master's commands and must do as directed").

In *In re Miller*, 86 B.R. 817 (Bankr.E.D. Pa.1988), our colleague, Judge Fox, provided a typically scholarly analysis of the factors relevant to determination of wheth-

**41**

er the debtor was liable for self-employment taxes under the Internal Revenue Code ("the IRC") or was a common-law employee who was paid "wages." In finding the debtor-telephone solicitor to be "self-employed," Judge Fox applies the "common law definition of employee" as dictated by the pertinent Treasury Regulation, published at 26 C.F.R. § 31.3121(d)–1(c)(2). *Id.* at 820. This Regulation states, in pertinent part, as follows:

(2) Generally such [an employer-employee] relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work, to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee under the usual common law rules. *Individuals such as* physicians, lawyers, *dentists*, veterinarians, construction contractors, public stenographers, and auctioneers, *engaged in the pursuit of an independent* trade, business, or *profession, in which they offer their services to the public, are independent contractors and not employees* (emphasis added).

The Third Circuit Court of Appeals, also interpreting the IRC in *American Consulting Corp. v. United States*, 454 F.2d 473, 477 (3d Cir.1971), similarly relied upon "the common law principles [of] the 'right to control' test." *Cf. Donovan v. Dialamerica Marketing, Inc.*, 757 F.2d 1376, 1383–88 (3d Cir.1985) (Fair Labor Standards Act case: closely supervised "home researchers" were employees; "distributors" subject to little control over their activities were not employees).

The Dentist's receipt of a form 1099, as opposed to a W–2 form for wages, is also indicative of the fact that the Dentist was not an employee of the Debtor, but an independent contractor. *See* 26 C.F.R. § 1.6041–2(a)(1); *United States v. MacKenzie*, 777 F.2d 811, 813, 815 (2d Cir. 1985); and *Miller, supra*, 86 B.R. at 819, 821.

One rich vein of cases addressing the "common law definition of employees" under Pennsylvania law arises in interpretation of coverage under its unemployment compensation law. As explained in *Monroe G. Koggan Associates, Inc. v. Commonwealth Unemployment Compensation Bd. of Review*, 80 Pa.Cmwlth. 626, 629–30, 472 A.2d 277, 279 (1984), the Pennsylvania courts have developed a

two-part conjunctive test in determining whether a workman is an employee of a person who engaged him is whether he is subject to the latter's control, not only with regard to the work to be done but also with regard to the manner of performing it and whether the individual has a proprietary interest in some business he can operate free from the control of any other individual. *Pavalonis v. Unemployment Compensation Board of Review*, 57 Pa.Commonwealth Ct. 289, 426 A.2d 215 (1981). In applying the first part of this test, many factors have been examined by the courts including whether tools were supplied by the workman,[3] whether the workman received on the job training,[4] whether there was a fixed rate of remuneration,[5] whether there were regular meetings that had to be attended,[6] whether periodic progress

reports were to be made,[7] and other relevant factors. With regard to the second part of the test, factors that we have considered have been "whether the individual held himself out or was capable of performing the particular activities in question for anyone who wished to avail himself of such services and whether the nature of the business compelled the individual to look to only a single employer for the continuation of such services." *Jochynek v. Unemployment Compensation Board of Review*, 32 Pa.Commonwealth Ct. 86, 90, 378 A.2d 490, 492 (1977). ...

Footnotes:

3. *See C.A. Wright Plumbing Co. v. Unemployment Compensation Board of Review*, 6 Pa.Commonwealth Ct. 45, 293 A.2d 126 (1972).

4. *See id.*

5. *See Biter v. Department of Labor and Industry*, 39 Pa.Commonwealth Ct. 391, 395 A.2d 669 (1978).

6. *See O'Brien v. Unemployment Compensation Board of Review*, 29 Pa.Commonwealth Ct. 272, 370 A.2d 805 (1977).

7. *See Crenshaw [v. Unemployment Compensation Board of Review*, 50 Pa.Cmwlth. 136, 412 A.2d 682 (1980) ].

*See also, e.g., Jones v. Unemployment Compensation Bd. of Review*, 163 Pa.Super. 271, 276, 60 A.2d 568, 570 (1948); *Erie Independence House, Inc. v. Commonwealth Unemployment Compensation Bd. of Review*, 126 Pa.Cmwlth. 358, 360–63, 559 A.2d 994, 995–96 (1989); and *Cameron v. Commonwealth Unemployment Compensation Bd. of Review*, 68 Pa.Cmwlth. 407, 410–11, 449 A.2d 123, 125–26 (1982).

In this group of cases, we found *Erie Independence House* to be the most factually analogous. There, the count found that a personal case attendant ("PCA") for a severely disabled person who was trained, certified, and paid by the Erie Independence House ("EIH") was not an "employee" of the EIH because the control of a PCA by the EIH on the job was limited. 126 Pa.Cmwlth. at 360–63, 559 A.2d at 995–96. *Compare Parmelee, Mil-*

*ler, Welsh & Kratz v. Commonwealth Unemployment Compensation Bd. of Review*, 45 Pa.Cmwlth. 570, 405 A.2d 1052 (1979) (attorney found to be an "employee" of a law firm only because he never received any compensation from clients, never had a client, and never performed legal services for clients).

Under the tests set down in the tax law and *Koggan Associates, supra*, the Dentist was clearly not an "employee" of the Debtor. The Debtor had no right to control or direct the manner in which the Dentist performed services. It did not provide the Dentist with his "tools." The Dentist supplied his own equipment, received no training from the Debtor, was ultimately paid on a commission computed on the basis of business generated rather than a fixed rate, and neither had to attend meetings nor make reports to the Debtor. The Dentist undoubtedly held himself out as available to the general community for services and was in no way restricted in his choice of clientele by the Debtor. The only restriction was the use the Debtor's facility for hospital referrals, which we find to be relatively insignificant to the operation of the Dentist's business.

The strongest element in favor of the Dentist's position is the constant references to his "salary" and "employment" by the Debtor in its own communications to the Dentist. These references are not insignificant and, combined with other elements, such as receipt of a regular salary from the Debtor, could be substantial evidence in the Dentist's favor. *Compare Herrin v. L.M. Collins & Associates, Inc.*, 483 F.Supp. 288, 290 (W.D.Pa.1980). However, there is ample authority for the principle that the parties' own characterization of the relationship is not conclusive. *See Toner v. Sobelman*, 86 F.Supp. 369, 378 (E.D.Pa.1949); *American Writing Machine Co. v. Unemployment Compensation Bd. of Review*, 148 Pa.Super. 299, 300, 306, 25 A.2d 85, 85, 88 (1942); and *Harper v. Commonwealth Unemployment Compensation Bd. of Review*, 65 Pa.Cmwlth. 474, 476–77, 443 A.2d 419, 420–21 (1982). *Cf. In re St. Mary Hospital*, 101 B.R. 451,

461 (Bankr.E.D.Pa.1989) (a contract must be interpreted under the law applicable to it as it is written, not how the parties may have erroneously interpreted it).

 We are not prepared to hold that professionals cannot be employees, which may have been the ground for decision in *Estey, supra.* The definition of the "wage priority" has been broadened to expressly include "salary" and "commissions" payable to professionals under the Code. However, we believe that the Code continues to require that a substantial measure of control over the claimant's conduct must be exercised by the employer-debtor before the claimant may be deemed an "employee" entitled to a priority claim under § 507(a)(3). The Debtor's offhand characterizations of the Dentist as an "employee," in the face of significant objective aspects of the parties' relationship which contradicts the existence of an employer-employee relationship, cannot be controlling.

See also 127 B.R. 1001.

### D. CONCLUSION

Therefore, we conclude, and therefore order, that the Dentist is entitled to an unsecured claim, rather than a priority claim under § 507(a)(3), in the agreed amount of $2,000.